[945 NE2d 461, 920 NYS2d 268]

Yᴀsᴍɪɴ Kᴀʙɪʀ, Respondent, v Cᴏᴜɴᴛʏ ᴏꜰ Mᴏɴʀᴏᴇ et al., Appellants.

Argued January 13, 2011; decided February 17, 2011

**POINTS OF COUNSEL**

*William K. Taylor, County Attorney*, Rochester (*Howard A. Stark* of counsel), for appellants. I. Deputy DiDomenico was engaged in an emergency operation of a police vehicle and an authorized emergency vehicle. (*Saarinen v Kerr*, 84 NY2d 494; *Szczerbiak v Pilat*, 90 NY2d 553; *O'Banner v County of Sullivan*, 16 AD3d 950; *Criscione v City of New York*, 97 NY2d 152; *Allen v Town of Amherst*, 8 AD3d 996.) II. The Vehicle and Traffic Law § 1104 (e) "reckless disregard" standard is applicable to driving in compliance with the rules of the road. (*Saarinen v Kerr*, 84 NY2d 494; *Szczerbiak v Pilat*, 90 NY2d 553; *Criscione v City of New York*, 97 NY2d 152; *Badalamenti v City of New York*, 30 AD3d 452; *Alvarado v Dillon*, 67 AD3d 1214; *Ham v City of Syracuse*, 37 AD3d 1050, 8 NY3d 976; *Campbell v City of Elmira*, 84 NY2d 505; *Lorber v Town of Hamburg*, 225 AD2d 1062; *O'Banner v County of Sullivan*, 16 AD3d 950; *Tutrani v County of Suffolk*, 64 AD3d 53.) III. Deputy DiDomenico's conduct was not in reckless disregard for the safety of

others. (*Szczerbiak v Pilat*, 90 NY2d 553; *Saarinen v Kerr*, 84 NY2d 494; *Hughes v Chiera*, 4 AD3d 872.)

*Brenna, Brenna & Boyce, PLLC*, Rochester (*Robert L. Brenna, Jr.*, and *Donald G. Rehkopf, Jr.*, of counsel), for respondent. I. The majority in the Appellate Division decision below, as a matter of law, correctly interpreted Vehicle and Traffic Law § 1104 (b) as creating a limited statutory privilege against ordinary negligence for the specifically enumerated exceptions in section 1104 (b). (*Riley v County of Broome*, 95 NY2d 455; *Sanders v Winship*, 57 NY2d 391; *Ayers v O'Brien*, 13 NY3d 456; *Saarinen v Kerr*, 84 NY2d 494; *Szczerbiak v Pilat*, 90 NY2d 553; *Criscione v City of New York*, 97 NY2d 152; *Tutrani v County of Suffolk*, 42 AD3d 496.) II. The majority below was correct as a matter of law in rejecting the argument that Vehicle and Traffic Law § 1104 (e) exempts any and all activity of a driver of an authorized emergency vehicle engaged in an emergency operation absent reckless conduct. (*Town of Massena v Niagara Mohawk Power Corp.*, 45 NY2d 482.)

*Christine Malafi, County Attorney*, Hauppauge (*Christopher A. Jeffreys* of counsel), for County of Suffolk, amicus curiae. I. The provisions of the Vehicle and Traffic Law demonstrate that the "reckless disregard" standard set forth in Vehicle and Traffic Law § 1104 (e) applies to all authorized emergency vehicles. (*Saarinen v Kerr*, 84 NY2d 494; *Rangolan v County of Nassau*, 96 NY2d 42; *Matter of Robert J.*, 2 NY3d 339.) II. This Court's prior interpretations of Vehicle and Traffic Law § 1104 (e) demonstrate that the "reckless disregard" standard applies to all authorized emergency vehicles. (*Stanton v State of New York*, 29 AD2d 612, 26 NY2d 990; *Abood v Hospital Ambulance Serv.*, 30 NY2d 295; *Saarinen v Kerr*, 84 NY2d 494; *Williams v City of New York*, 2 NY3d 352; *Gonzalez v Iocovello*, 93 NY2d 539; *Campbell v City of Elmira*, 84 NY2d 505; *Gervasi v Peay*, 254 AD2d 172; *Daly v County of Westchester*, 63 AD3d 988; *Lupole v Romano*, 307 AD2d 697; *Palmer v City of Syracuse*, 13 AD3d 1229.) III. This Court's interpretation of the "reckless disregard" provision of Vehicle and Traffic Law § 1103 is applicable to Vehicle and Traffic Law § 1104 (e). (*Riley v County of Broome*, 95 NY2d 455; *Bliss v State of New York*, 272 AD2d 567, 95 NY2d 911; *Saarinen v Kerr*, 84 NY2d 494; *Primeau v Town of Amherst*, 5 NY3d 844.)

*Andrew M. Cuomo, Attorney General*, Albany (*Robert M. Goldfarb, Barbara D. Underwood* and *Andrew D. Bing* of counsel),

for New York State Division of State Police, amicus curiae. Vehicle and Traffic Law § 1104 applies a reckless disregard standard of civil liability to all conduct of a driver of an emergency vehicle engaged in an emergency operation. (*Saarinen v Kerr*, 84 NY2d 494; *Campbell v City of Elmira*, 84 NY2d 505; *Criscione v City of New York*, 97 NY2d 152; *Riley v County of Broome*, 95 NY2d 455; *Szczerbiak v Pilat*, 90 NY2d 553.)

**OPINION OF THE COURT**

READ, J.

On this appeal, we hold that the reckless disregard standard of care in Vehicle and Traffic Law § 1104 (e) only applies when a driver of an authorized emergency vehicle involved in an emergency operation engages in the specific conduct exempted from the rules of the road by Vehicle and Traffic Law § 1104 (b). Any other injury-causing conduct of such a driver is governed by the principles of ordinary negligence.

I.

At 3:57 P.M. on September 20, 2004, defendant John DiDomenico, a road patrol deputy in the Monroe County Sheriff's Office, was on routine patrol in a marked police vehicle when he received a radio dispatch from the Office of Emergency Communications dispatch or "911 center" directing him to respond to a stolen vehicle report at an address in Henrietta, New York. At the time, he was heading south on West Henrietta Road, nearing a traffic light at the intersection of West Henrietta Road and Brighton Henrietta Town Line Road, which marks the border between the Towns of Brighton (on the north side) and Henrietta (on the south side).

DiDomenico soon received a second radio dispatch, which requested backup for another officer who was responding to a burglary alarm at a location in Henrietta. Because the 911 center categorized the burglary alarm as "classification one"—meaning "a serious call . . . that . . . needs immediate attention"—the deputy acknowledged the request, telling the dispatcher that he would assist with the burglary alarm before addressing the stolen vehicle report, which was assigned a higher classification and therefore a lower priority. At 4:02 P.M., the dispatcher transmitted information about the burglary call, including the address and the names of cross streets, to the mobile data terminal inside the deputy's vehicle.

DiDomenico did not activate the emergency lights or siren on his vehicle; he was traveling at a speed of 25 to 30 miles per

hour in a 40-mile-per-hour zone, and does not recall if he speeded up or slowed down after receiving the dispatch. The deputy explained that he was not familiar with the location of the burglary alarm, and "due to the amount of traffic during that time of day, [he] didn't want to initiate any emergency equipment without knowing where [he] was positively going." He therefore touched the terminal and "looked down for two to three seconds" at the display "to view [the names of] the cross streets." When the deputy lifted his gaze, he realized that "traffic had slowed." Although he immediately applied his brakes, he was unable to stop before rear-ending the vehicle in front of him, which was driven by plaintiff Yasmin Kabir.

There are three southbound lanes—two through lanes and a lefthand-turn lane—at the intersection of West Henrietta Road and Brighton Henrietta Town Line Road. Kabir testified that she was traveling in the left travel lane. She had stopped for a red traffic light, and was just beginning to move forward slowly toward the congested intersection when her car was hit.

In October 2005 and February 2006 Kabir brought actions, subsequently consolidated, against Monroe County, DiDomenico and others, alleging serious injury under New York's No-Fault Law. In May 2008, defendants moved for summary judgment to dismiss the complaints, and in July 2008, Kabir cross-moved for partial summary judgment on liability. The parties disputed whether Vehicle and Traffic Law § 1104 applied, making DiDomenico liable for the accident only if he acted with "reckless disregard for the safety of others" (Vehicle and Traffic Law § 1104 [e]; *see also Saarinen v Kerr*, 84 NY2d 494 [1994] [holding that the standard of care under Vehicle and Traffic Law § 1104 is reckless disregard and addressing the conduct required to show recklessness]). On September 26, 2008, Supreme Court awarded summary judgment to defendants (21 Misc 3d 1107[A], 2008 NY Slip Op 52000[U] [Sup Ct, Monroe County 2008]).[1] The court concluded that DiDomenico's conduct was covered by section 1104, and that Kabir had not raised a triable issue of fact as to whether he acted with reckless disregard.

On December 30, 2009, the Appellate Division reversed, with two Justices dissenting (68 AD3d 1628 [4th Dept 2009]). The majority held that the reckless disregard standard in section 1104 (e) is limited to accidents caused by conduct privileged

---

1. At that point, the defendants remaining in the action were the County, DiDomenico and Monroe County Sheriff Patrick M. O'Flynn.

under section 1104 (b). Because DiDomenico's injury-causing conduct was not exempt under this provision, the majority concluded that "the applicable standard for determining liability [was] the standard of ordinary negligence" (*id.* at 1633). The court further observed that "a rear-end collision with a vehicle in stop-and-go traffic creates a prima facie case of negligence with respect to the operator of the rear vehicle"; therefore, "partial summary judgment on liability in favor of the person whose vehicle was rear-ended is appropriate in the absence of a nonnegligent explanation for the accident" (*id.*). Concluding that Kabir had met her burden on the cross motion and that defendants had not put forward a nonnegligent explanation, the court reinstated the complaint against defendants and granted Kabir's cross motion for partial summary judgment on liability.[2] The dissent interpreted section 1104 differently, taking the position that the reckless disregard standard was applicable to any injury-causing conduct of a driver of an emergency vehicle involved in an emergency operation. On March 19, 2010, the Appellate Division granted defendants leave to appeal, and certified to us the question of whether its order was properly made (71 AD3d 1548 [4th Dept 2010]). We now affirm and therefore answer the certified question in the affirmative.

## II.

Section 1104 was put in place in 1957 as part of what is now title VII of the Vehicle and Traffic Law, which was intended to "creat[e] a uniform set of traffic regulations, or the 'rules of the road' . . . to update and replace the former traffic regulations, and bring them into conformance with the Uniform Vehicle Code adopted in other states" (*Riley v County of Broome*, 95 NY2d 455, 462 [2000] [citations omitted]; *see also* L 1957, ch 698). Subdivision (a) of this provision empowers the driver of an

---

**2.** We note that Kabir must still prove that she sustained a "serious injury" within the meaning of New York's No-Fault Law in order to recover damages from defendants for her alleged personal injuries (*see* Insurance Law § 5104 [a]). The dissent takes us to task for supposedly "transform[ing DiDomenico's momentary glance] into a basis for driver liability as a matter of law" (dissenting op at 236 n 1). As explained in the text, after determining that section 1104 was inapplicable, the Appellate Division granted plaintiff's cross motion because defendants did not offer a nonnegligent explanation to rebut the prima facie case of negligence made out by the happening of a rear-end collision. On appeal, defendants did not challenge the Appellate Division's decision on that score.

"authorized emergency vehicle" (defined in Vehicle and Traffic Law § 101)[3] when involved in an "emergency operation" (defined in Vehicle and Traffic Law § 114-b)[4] to "exercise *the privileges set forth in this section [1104]*, but subject to *the conditions herein stated*" (emphases added]). The statute then lists these privileges in subdivision (b):

> "1. Stop, stand or park irrespective of the provisions of this title [VII];
>
> "2. Proceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation;
>
> "3. Exceed the maximum speed limits so long as he does not endanger life or property;
>
> "4. Disregard regulations governing directions of movement or turning in specified directions" (Vehicle and Traffic Law § 1104 [b]).

The privileges correspond generally with articles in title VII of the Vehicle and Traffic Law, entitled "Rules of the Road" (*see* arts 32 ["Stopping, Standing, and Parking"], 29 ["Special Stops Required"], 24 ["Traffic Signs, Signals and Markings"], 30 ["Speed Restrictions"], 25 ["Driving on Right Side of Roadway, Overtaking and Passing, Etc."], 26 ["Right of Way"], 28 ["Turning and Starting and Signals on Stopping and Turning"]).

Subdivision (c) of section 1104 sets out prerequisites or conditions upon the exercise of the privileges listed in subdivision (b): except in the case of police vehicles or bicycles "the exemptions herein granted" are available only when the authorized emergency vehicle is making use of prescribed audible and visual signals.

Finally, subdivision (e) of section 1104 specifies that *"[t]he foregoing provisions* shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others" (emphasis added). Thus, subdivision (e)

---

**3.** Vehicle and Traffic Law § 101 defines an "Authorized emergency vehicle" to include "[e]very . . . police vehicle"; and for purposes of section 101, a "[p]olice vehicle" includes a vehicle "operated by . . . a sheriff, undersheriff or regular deputy sheriff" (Vehicle and Traffic Law § 132-a).

**4.** An "[e]mergency operation" includes "[t]he operation . . . of an authorized emergency vehicle, when such vehicle is engaged in . . . responding to . . . [a] police call" (Vehicle and Traffic Law § 114-b).

cautions these drivers to operate their vehicles as safely as possible in an emergency and makes them answerable in damages if their reckless exercise of a privilege granted by subdivision (b) causes personal injuries or property damage.

But defendants and the dissent do not see it that way. They understand subdivision (e) to apply the reckless disregard standard of care to *all* injury-causing conduct of drivers of authorized emergency vehicles involved in emergency operations, whether or not that conduct is exempt under subdivision (b). But subdivision (e) links the reckless disregard standard of care to "[t]he foregoing provisions," which include the conditions in subdivision (c) and the privileges in subdivision (b).

The dissent complains that we have "interpret[ed] Vehicle and Traffic Law § 1104 (e) as if it read: 'When the driver of an emergency vehicle engages in privileged conduct, that driver will be protected from liability unless he or she acts in reckless disregard of the safety of others' " (dissenting op at 236-237). The dissent, however, interprets subdivision (e) to mean "The driver of an authorized emergency vehicle involved in an emergency operation shall be protected from liability unless he or she acts in reckless disregard of the safety of others." As the dissent acknowledges, though, subdivision (e) is written in the negative; it refers only to "[t]he foregoing provisions"; and the "foregoing provisions" only privilege the conduct identified in subdivision (b), not any and all conduct of a driver.

Further, the dissent opines that the "evident intent" of the reference to "foregoing provisions" in Vehicle and Traffic Law § 1104 (e) "was to ensure that the creation of the privileges earlier in the statute would not be misinterpreted as precluding an emergency responder from being held accountable when he or she caused an accident while engaged in privileged conduct" (dissenting op at 237). Thus, such emergency responder "cannot receive a traffic citation" for conduct enumerated under section 1104 (b) (*id.* at 232); and "the fact that a driver failed to conform to a traffic law" would not "constitute prima facie evidence of negligence," or "be viewed as recklessness per se" (*id.* at 237-238). Assuming this interpretation of the interplay between subdivisions (b) and (e) is correct, it does not follow that section 1104 (e) creates a reckless disregard standard of care for unprivileged conduct. Indeed, the logical implication of the dissent's reading of section 1104 is that the standard of care for *all*

emergency driving—even if privileged under subdivision (b)—is negligence.[5]

The Legislature certainly knew how to create the safe harbor from ordinary negligence envisioned by defendants and the dissent. For example, the Legislature might simply have structured section 1104 (a) and (b) along the lines of section 1103 (b). As originally adopted in 1957, this provision stated in relevant part that

> *"[u]nless specifically made applicable, the provisions of this title [VII] shall not apply* to persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway . . . but shall apply to such persons and vehicles when traveling to or from such work"* (former Vehicle and Traffic Law § 1103 [b] [emphasis added]).

Thus, rather than taking the approach of section 1104 (a) and (b)—excusing the driver of an authorized emergency vehicle from complying with certain rules of the road when involved in an emergency operation—the Legislature in section 1103 (b) exempted "persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway" from *all* the rules of the road, subject to any statutory exceptions. Subsequently, the Legislature "soften[ed] the outright exemption" in section 1103 (b) by adding the due regard/reckless disregard language of section 1104 (e) (*Riley*, 95 NY2d at 465; *see also* L 1974, ch 223). In addition, in 1987 the Legislature created a statutory exception, making "specifically . . . applicable" those

---

5. This is exactly what the majority of states have decided, contrary to our decision in *Saarinen* (*see e.g. Tetro v Town of Stratford*, 189 Conn 601, 609, 458 A2d 5, 9 [1983] ["(E)mergency vehicle legislation provides only limited shelter from liability for negligence. The effect of the statute is *merely to displace the conclusive presumption of negligence* that ordinarily arises from the violation of traffic rules. The statute does not relieve operators of emergency vehicles from their general duty to exercise due care for the safety of others" (emphasis added)]; *City of Little Rock v Weber*, 298 Ark 382, 389, 767 SW2d 529, 533 [1989] [the "driver of an emergency vehicle is held to a standard of ordinary care in the exercise of (the) statutory privileges"]; *Barnes v Toppin*, 482 A2d 749, 755 [Del 1984] [if police officer "was found to be excused from obeying the speed limit" under the statute, he was still required "to drive with due regard for the safety of all persons" and thus was "governed by the usual rules of negligence" (internal quotation marks omitted)]; *Lee v City of Omaha*, 209 Neb 345, 307 NW2d 800 [1981]; *Rutherford v State*, 605 P2d 16 [Alaska 1979]; *Doran v City of Madison*, 519 So 2d 1308 [Ala 1988]).

provisions in title VII regarding driving under the influence of drugs or alcohol (L 1987, ch 528).[6]

Legislative history further supports the view that the reckless disregard standard of care in Vehicle and Traffic Law § 1104 (e) is limited to accidents or incidents caused by exercise of a privilege identified in Vehicle and Traffic Law § 1104 (b). In its 1954 report, the New York State Joint Legislative Committee on Motor Vehicle Problems described section 114 of its proposed text—adopted by the Legislature in 1957 as Vehicle and Traffic Law § 1104 with minor, nonsubstantive changes (*see* L 1957, ch 698), and current Vehicle and Traffic Law § 1104 (a), (b), (c) and (e)[7]— as follows:

> "Section 114 *lists certain privileges accorded* drivers of authorized emergency vehicles *when responding to an emergency call or when in pursuit of an actual or suspected violator of the law*. They may park in prohibited places, pass stop signs or signals, exceed speed limits and disregard turning restrictions, but in all cases only with due regard for the safety of others. The special privileges are granted, except in the case of police vehicles, only when the driver . . . is giving such audible signal as may be reasonably necessary and when his vehicle is displaying the proper warning lights" (1954 NY Legis Doc No. 36, at 35 [emphases added]).

Further,

---

**6.** This exception to the exemption granted by section 1103 (b) was intended to allow highway workers to be prosecuted if they operated vehicles while in an intoxicated or impaired condition (*see* Mem in Support, Bill Jacket, L 1987, ch 528, at 6 ["(a)lthough present (s)ection 1103 (b) does not relieve (highway workers exempted) from the provisions of (t)itle VII . . . from the duty to proceed with due regard for the safety of all persons and from the consequences of their reckless disregard of the safety of others, this provision is applicable only with respect to civil actions against the operators or their employers and not to the accountability of the operator under the Vehicle and Traffic Law"]; *see also* Letter of Michael Colodner, Unified Court System, to Evan A. Davis, Counsel to the Governor, July 9, 1987, Bill Jacket, L 1987, ch 528, at 20 [noting that "(u)nder current law, highway work crews are exempt from prosecution for reckless driving or for driving while intoxicated"]). Under our view of section 1104, intoxicated or impaired emergency vehicle operators involved in an accident when engaged in an emergency operation would be subject to prosecution and to civil liability for ordinary negligence.

**7.** Section 1104 (d) was identical to the Committee's proposed section 114 (d). The wording of subdivision (d) has never changed, although it was relettered subdivision (e) in 1968 when a new subdivision (d) was added to the statute (L 1968, ch 336).

"Section 114 [i.e., section 1104] is divided into four subsections. Subsection (a) [i.e., section 1104 (a)] states *when, and under what circumstances, the driver of an authorized emergency vehicle may exercise the special privileges conferred by subdivision (b)* . . .

"Subsection (b) [i.e., section 1104 (b)] sets forth *four immunities which are granted* to emergency vehicles when they satisfy all the other prerequisites of section 114 . . .

"[T]hese privileges are conditioned [in subsection (c); i.e., section 1104 (c)] upon proper identification of the emergency vehicle so that motorists will have sufficient warning of their approach. The exemption given to police vehicles is required because they may need to approach suspected criminals without giving advance notice. . . .

"Finally, subsection (d) [i.e., section 1104 (e)] again repeats the caveat of paragraph (b) of section 224[8] by requiring safe driving from the drivers of emergency vehicles under all circumstances. It makes it clear that *the exemptions shall not be construed* to relieve a driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall *the grant of these privileges* protect the driver from the consequences of his reckless disregard for the safety of others" (*id.* at 36-37 [emphases added]).

This discussion confirms that these provisions are interrelated such that subdivision (e) does not create a reckless disregard standard of care independent of the privileges enumerated in subdivision (b).

Additionally, we note that this is the first time we have been asked to decide the question presented by this appeal. This is

---

8. Section 224 set out the rules governing ordinary vehicles when an authorized emergency vehicle approaches in performance of emergency duties. Paragraph (b) provided that "[t]his section [224 would] not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." Vehicle and Traffic Law § 1144, entitled "Operation of vehicles on approach of authorized emergency vehicles," originally included the same language (*see* L 1957, ch 698). In 1960, section 1144 (b) was amended slightly to substitute "reasonable care for" for "due regard for the safety of" (*see* L 1960, ch 300, § 48).

not entirely surprising: subdivision (b) exempts the conduct most likely to lead to a motor vehicle accident severe enough to prompt a lawsuit; for example, speeding or running a red light. Defendants and amici curiae insist, however, that in our prior decisions, particularly *Saarinen* and *Szczerbiak v Pilat* (90 NY2d 553 [1997]), we have held that the reckless disregard standard of care applies when the conduct of an emergency vehicle driver involved in an emergency operation causes personal injuries or property damage, regardless of whether that conduct is privileged under Vehicle and Traffic Law § 1104 (b).[9] Amicus curiae New York State Division of State Police, for example, argues that "[w]hile the facts of [*Saarinen*] involved a police officer who exceeded the speed limit during a chase . . . [the] Court's holding was broad and unambiguous," quoting the following passage:

> *"Faced squarely with this question of statutory interpretation for the first time*, we hold that a police officer's conduct in pursuing a suspected lawbreaker may not form the basis of civil liability to an injured bystander unless the officer acted in reckless disregard for the safety of others" (*Saarinen*, 84 NY2d at 501 [emphasis added]).

Whether the police officer in *Saarinen* was entitled to have his actions judged by the standard of care in section 1104 (e) was not at issue, as the Division acknowledges. The dispute was over what that standard entailed. Thus, in the paragraph preceding the quoted language, we explained that "[b]ecause the

---

**9.** The dissent likewise suggests that since our decision in *Saarinen*, section 1104 (e) has been universally understood in this way. The fact is, though, that in the majority of cases implicating section 1104, the conduct allegedly causing the accident is, in fact, listed in subdivision (b). For example, the dissent cites *Herod v Mele* (62 AD3d 1269, 1270 [4th Dept 2009]), decided by the Fourth Department seven months before its decision in *Kabir*, to support the thesis that our interpretation (and the Fourth Department's) in this case is novel. The issue on this appeal did not arise in *Herod*, however, because there the deputy was "exceeding the posted speed limit at the time of the collision" (*id.* at 1270). The same is true of *Gonyea v County of Saratoga* (23 AD3d 790 [3d Dept 2005]), also cited by the dissent. In *Gonyea*, a deputy responding to a two-car accident parked her vehicle such that it protruded into the travel lane of the roadway by about 18 inches, allegedly causing a motorist to swerve and hit a motorcyclist traveling in the opposite lane. The third case mentioned by the dissent—*Rodriguez v Incorporated Vil. of Freeport* (21 AD3d 1024 [2d Dept 2005])—is a memorandum decision with few facts where the parties evidently focused on whether the police officer was engaged in an "emergency operation" at the time of the accident, which occurred while she was parking her patrol car.

statute makes reference to both 'due regard' and 'reckless disregard' for the safety of others, the courts of this State have had some difficulty articulating the precise test for determining a driver's liability for injuries resulting from the operation of an emergency vehicle" (*id.* at 500). We observed that some New York courts had settled on "recklessness" as the standard, while others adopted " 'unreasonable under the circumstances' . . . and 'negligen[ce]' . . . , either alone or interchangeably with 'recklessness,' to describe the level of culpability that will support liability under Vehicle and Traffic Law § 1104 (e)" (*id.* [citations omitted]). The "question of statutory interpretation" that we referred to in the language cited by the State Police was therefore the nature of the standard of care established by section 1104 (e) in a situation where the police officer was clearly entitled to its benefit.

And notwithstanding arguments made to the contrary, dicta in *Saarinen* undercut, rather than support, defendants' view of section 1104. For example, the very first paragraph of the opinion includes the following language:

> "Vehicle and Traffic Law § 1104 . . . qualifiedly exempts [drivers of authorized emergency vehicles] from *certain traffic laws* when they are 'involved in an emergency operation.' At issue in this appeal are the meaning and effect of the statute's provisions for civil liability in the event of an accident. Consistent with its language and purpose, we hold that Vehicle and Traffic Law § 1104 (e) precludes the imposition of liability for *otherwise privileged conduct* except where the conduct rises to the level of recklessness" (*id.* at 497 [citation omitted and emphases added]).[10]

Importantly, we later noted that "[t]he touchstone of our analysis" in *Saarinen* was Vehicle and Traffic Law § 1104

---

**10.** Similar descriptions of section 1104 appear in dicta in other cases (*see e.g. Gonzalez v Iocovello*, 93 NY2d 539, 551 [1999] ["Vehicle and Traffic Law § 1104 *excuses the violation of certain traffic laws* by authorized vehicles involved in an emergency operation" (emphasis added)]; *Criscione v City of New York*, 97 NY2d 152, 156 [2001] ["(T)he driver of an 'authorized emergency vehicle' engaged in an 'emergency operation' is *exempt from certain 'rules of the road'* under Vehicle and Traffic Law § 1104" (citing *Riley*, 95 NY2d at 462 [emphasis added])]; *Williams v City of New York*, 2 NY3d 352, 364 [2004] [section 1104 "creates *a privilege exempting drivers* of authorized emergency vehicles *from certain provisions* in the Vehicle and Traffic Law" (emphases added)]; *Ayers v O'Brien*, 13 NY3d 456, 457 [2009] ["Operators of

"which permits the driver of an 'authorized emergency vehicle' to proceed past red traffic lights and stop signs, exceed the speed limit and disregard regulations regarding the direction of traffic, as long as certain safety precautions are observed. *The privileges afforded by the statute are circumscribed by section 1104 (e)* . . . [which] establishes the standard for determining an officer's civil *liability* for *damages resulting from the privileged operation of an emergency vehicle*" (84 NY2d at 499-500 [citations and internal quotation marks omitted; emphases added]).

In *Szczerbiak*, a case that went to trial about six weeks after we handed down our decision in *Saarinen*, the sole question on appeal was "whether [the police officer's] conduct in driving the automobile rose to the level of 'reckless disregard' for the safety of others required by Vehicle and Traffic Law § 1104 (e)" (*Szczerbiak*, 90 NY2d at 555). The accident at issue was arguably caused by the police officer's failure to keep a proper lookout: just as he took his eyes off the road to activate his emergency lights and siren, the officer hit and killed a 16-year-old pedestrian/bicyclist. As a result, the plaintiffs in *Szczerbiak* might have contended that the officer's conduct was not to be evaluated under the reckless disregard standard of care in Vehicle and Traffic Law § 1104 (e) because the fatality did not result from his exercise of a privilege granted by section 1104 (b). But they never made this argument and we therefore did not decide this issue; we merely remarked that even if the officer "were negligent in glancing down, this 'momentary judgment lapse' does not alone rise to the level of recklessness required of the driver of an emergency vehicle in order for liability to attach" (90 NY2d at 557).

Finally, the dissent devotes several pages to a discussion of the many supposed "practical problems" presented by our interpretation of the statute (dissenting op at 240-242). Simply put, section 1104 (e) establishes a reckless disregard standard of care "for determining . . . civil liability for damages resulting from the privileged operation of an emergency vehicle" (*Saarinen*, 84 NY2d at 500); if the conduct causing the accident resulting in injuries and damages is not privileged under Vehicle and

authorized emergency vehicles are *protected from liability for conduct privileged under Vehicle and Traffic Law § 1104*, unless their conduct rises to the level of reckless disregard" (emphasis added)]).

Traffic Law § 1104 (b), the standard of care for determining civil liability is ordinary negligence.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question should be answered in the affirmative.

GRAFFEO, J. (dissenting). By concluding that the conduct of a driver of an emergency vehicle involved in an emergency operation should be assessed under the reckless disregard standard of care under Vehicle and Traffic Law § 1104 (e) only when the driver is engaged in one of the activities privileged in section 1104 (b), the majority reads a limitation into section 1104 (e) that I believe is unworkable, incompatible with our precedent and unwarranted given the language in the statute. The majority's new rule is also inconsistent with the public policy underlying section 1104 because it creates an unjustifiable distinction that extends the protection of qualified immunity only to police, fire or ambulance personnel who speed, run a red light or violate a handful of other traffic laws while responding to emergency calls. Thus, the majority holding has the perverse effect of encouraging conduct directly adverse to the public policy of requiring emergency responders to exercise the utmost care during emergency operations. As we observed in *Saarinen v Kerr* (84 NY2d 494 [1994]), section 1104 (e) provides emergency responders with the benefit of the heightened "reckless disregard" standard of liability in recognition of the fact that these responders must make split-second decisions (that sometimes may include violating traffic laws) in service of a greater good. Because the majority undermines this proposition, I respectfully dissent.

## I.

While driving a marked police vehicle, and in the course of responding to a radio call of a possible burglary in progress, Monroe County Deputy Sheriff John DiDomenico collided with a vehicle operated by plaintiff Yasmin Kabir after he momentarily took his eyes off the road to consult a data terminal in his vehicle. Because DiDomenico was operating an "authorized emergency vehicle" as defined in Vehicle and Traffic Law § 101 while engaged in an "emergency operation" as defined in Vehicle and Traffic Law § 114-b, any liability arising from his conduct must be assessed under the standard set forth in Vehicle and Traffic Law § 1104. That statute contains two provisions that are at the heart of this controversy. The first—

section 1104 (b)—creates four categories of "privileged" conduct, specifically permitting an emergency responder to disregard a variety of traffic laws, including proceeding through red lights and exceeding maximum speed limits. In other words, section 1104 (b) exempts emergency responders from compliance with certain rules of the road. As a result, the operator of a fire truck who, for example, drives through a red light while responding to a call cannot receive a traffic citation since that conduct is permitted under section 1104 (b).

But section 1104 (b) says nothing about the standard of liability that applies when an emergency responder is involved in an accident giving rise to a lawsuit seeking civil damages. That issue is addressed in section 1104 (e), which provides:

> "The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

Although we have previously recognized that this provision is not a model of clarity, in *Saarinen* (84 NY2d 494) we determined that it imposes a heightened "reckless disregard" standard of care applicable to police officers and other responders engaged in emergency operations. We held that

> "a police officer's conduct in pursuing a suspected lawbreaker may not form the basis of civil liability to an injured bystander unless the officer acted in reckless disregard for the safety of others. This standard demands more than a showing of a lack of 'due care under the circumstances'—the showing typically associated with ordinary negligence claims. It requires evidence that 'the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome" (*id.* at 501 [citations omitted]).

This statement of the relevant standard was unconditional and encompassed every aspect of a police officer's "conduct"—we did not suggest that an emergency responder's actions are to be assessed under the reckless disregard standard only if, at the time of the accident, he or she was engaged in conduct privileged under section 1104 (b). Prior to the Appellate Division decision

in this case, no court had imposed such a limitation on the scope of section 1104 (e).

Since *Saarinen*, Vehicle and Traffic Law § 1104 has been understood to impose a two-part test: if the driver was operating an "authorized emergency vehicle" and was involved in an "emergency operation" as those terms are defined in the statutory scheme, the driver was entitled to the qualified immunity afforded by the reckless disregard standard (*see e.g. Herod v Mele*, 62 AD3d 1269 [4th Dept 2009], *lv denied* 13 NY3d 717 [2010]; *Gonyea v County of Saratoga*, 23 AD3d 790 [3d Dept 2005]; *Rodriguez v Incorporated Vil. of Freeport*, 21 AD3d 1024 [2d Dept 2005]). The majority now adds a third component to the equation, precluding emergency responders from obtaining the benefit of the reckless disregard standard unless—ironically—they violated one of the traffic rules listed in section 1104 (b). Police officers, firefighters or ambulance drivers who manage to obey traffic signals or travel within the speed limit are out of luck if they are involved in an accident. Their conduct will be assessed under the ordinary negligence standard, making it much easier for these "law abiding" emergency responders to be held liable for damages. Does this make sense?

The precise issue presented in this case was not raised by the parties in *Saarinen* and the police officer whose conduct was under review in that case had apparently exceeded the speed limit, thereby engaging in privileged conduct. But our explanation of the legislative policy underlying the statute—as well as our analysis in that case and others—is antithetical to the approach now taken by the majority. We explained that Vehicle and Traffic Law § 1104

> "represents a recognition that the duties of police officers and other emergency personnel often bring them into conflict with the rules and laws that are intended to regulate citizens' daily conduct and that, consequently, they should be afforded a qualified privilege to disregard those laws where necessary to carry out their important responsibilities. Where the laws in question involve the regulation of vehicular traffic, the exercise of this privilege will inevitably increase the risk of harm to innocent motorists and pedestrians. Indeed, emergency personnel must routinely make conscious choices that will necessarily escalate the over-all risk to the public at large in the service of an immediate, specific law enforcement or public safety goal.

"Measuring the 'reasonableness' of these choices against the yardstick of the traditional 'due care under the circumstances' standard would undermine the evident legislative purpose of Vehicle and Traffic Law § 1104, i.e., affording operators of emergency vehicles the freedom to perform their duties unhampered by the normal rules of the road . . . [T]he possibility of incurring civil liability for what amounts to a mere failure of judgment could deter emergency personnel from acting decisively and taking calculated risks in order to save life or property or to apprehend miscreants" (84 NY2d at 502).

*Saarinen*'s public policy analysis is inconsistent with the majority's holding here which apparently requires parsing the specific conduct that a police officer was engaged in during an emergency operation to distinguish privileged acts from non-privileged acts for the purpose of altering the standard of liability depending on which immediate conduct caused the accident. This approach is incompatible with *Saarinen*'s concern that emergency responders be given appropriate latitude to make the quick decisions that are necessary when responding to police calls and other emergency situations. Under the rule the majority now adopts, police officers are free to make such decisions without fear of reprisal only when the judgment involves running a red light or exceeding the speed limit; if drivers choose instead to adhere to the rules of the road, any accompanying lapse in judgment may give rise to civil liability.

We have never applied different standards of liability to an officer's conduct depending on whether it did or did not fit within one of the privileges articulated in Vehicle and Traffic Law § 1104 (b). In *Saarinen*, when the police officer observed a car being driven recklessly, he began to follow the vehicle, activating his siren and emergency lights. When the vehicle failed to pull over, instead speeding away, the officer gave chase, driving above the speed limit in pursuit. During the chase, the suspect's car crashed into a vehicle operated by a civilian bystander, causing injury. The civilian sued both the suspect and the officer's municipal employer. After finding that section 1104 (e) imposed a reckless disregard standard, the Court held that the municipality was entitled to summary judgment dismissing the complaint. As is common in section 1104 cases, resolution of whether the officer's conduct met the reckless disregard standard (i.e., whether there was a question of fact on that score) turned not

on the so-called privileged conduct—there, speeding—but on other actions taken by the driver. We explained:

> "[A]s a matter of law, Officer McGown's pursuit of [the suspect] did not overstep the limits of the statutory qualified privilege. It is true that McGown exceeded the posted speed limit, but that conduct certainly cannot alone constitute a predicate for liability, since it is expressly privileged under Vehicle and Traffic Law § 1104 (b) (3). The other circumstances on which plaintiff and defendant [suspect] rely—the wet condition of the road, the possibility of other vehicular traffic in the vicinity, the over-all speed of McGown's vehicle and McGown's purported delay in calling his headquarters—are similarly unpersuasive, particularly in the context of an inquiry based on the 'reckless disregard' standard" (*Saarinen*, 84 NY2d at 503).

We thus applied the reckless disregard standard to *all* of the officer's conduct, including claims that he failed to properly consider the fact that other traffic might be in the area and failed to promptly report the chase to his supervisors (who might have ordered him to desist). We did not analyze the privileged conduct under the heightened standard and then apply another, less stringent standard to conduct not addressed in section 1104 (b).

We followed the same approach in *Szczerbiak v Pilat* (90 NY2d 553 [1997]), a case similar to this case because it involved an allegation that an accident was caused by an officer momentarily removing his eyes from the roadway. There, while driving his police vehicle in response to a radio call of a fight in progress at a nearby location, a police officer struck and killed a teenager riding a bicycle. Just prior to the collision, the officer had

> "accelerated past the drivers in the passing lane, and then pulled into the passing lane himself with the intention of activating his emergency lights and siren. Officer Pilat testified that he did not have his siren on at the time of the impact, and he appears to have struck [the decedent] while glancing down from the road momentarily to turn on his emergency lights and headlights" (*id.* at 555).

The decedent's estate sued and, at trial, the trial court issued a directed verdict in favor of the defense at the close of plaintiff's

case, finding that plaintiff's evidence did not meet the reckless disregard standard as a matter of law. This Court agreed, reasoning:

> "It can by no means be said that the risk which Officer Pilat took in accelerating down Dick Road was unreasonable, especially in light of his duty to respond to the report of five males engaged in a melee, or that he had created a great risk of probable harm by driving 800 feet before attempting to engage his emergency lights and siren. When Officer Pilat did glance down from the road to activate his emergency lights, there was no pedestrian traffic in sight and he was several blocks from the next intersection . . . *At any rate, even if Officer Pilat were negligent in glancing down, this 'momentary judgement lapse' does not alone rise to the level of recklessness required of the driver of an emergency vehicle in order for liability to attach*" (*id.* at 557 [citation omitted and emphasis added]).

Although the officer's act of "glancing down" was not conduct enumerated in Vehicle and Traffic Law § 1104 (b), we nonetheless applied the reckless disregard standard to that conduct in determining whether that act could give rise to liability, concluding that it did not meet the heightened standard of liability as a matter of law. Consistent with the analysis in *Szczerbiak*, I would hold that Deputy DiDomenico's similar conduct of glancing down to check the data terminal in his vehicle does not rise to the level of reckless disregard as a matter of law.[1] In my view, the majority's treatment of DiDomenico's conduct is difficult to square with our analysis in *Saarinen* and *Szczerbiak*.

## II.

I might be able to overlook these concerns if the majority's conclusion was compelled by the plain language of the statute. But I find its construction of the statutory language unpersuasive. The majority interprets Vehicle and Traffic Law § 1104 (e) as if it read: "When the driver of an emergency vehicle engages

---

1. Indeed, in this case, not only does the majority conclude that reversal of the judgment dismissing the complaint was warranted but it also upholds the grant of partial summary judgment in favor of plaintiff. But DiDomenico's momentary glance down at his data terminal—an action that, at worst, would amount to nothing more than a lapse in judgment under *Saarinen* and *Szczerbiak* insufficient to withstand a motion for summary judgment—has been transformed into a basis for driver liability as a matter of law.

in privileged conduct, that driver will be protected from liability unless he or she acts in reckless disregard of the safety of others." But that is not what section 1104 (e) says. Rather than identifying a set of circumstances when an emergency responder *is* protected by the reckless disregard standard, the provision does just the opposite. Written in the negative, the subdivision carves out the single situation when an emergency responder *is not* protected from liability. As we explained in *Saarinen*, that circumstance is when the driver is operating the vehicle with "reckless disregard for the safety of others."

I agree with the majority that it is significant that the Legislature began section 1104 (e) with a reference to the "foregoing provisions," a phrase that clearly refers to the privileges and conditions listed in other subdivisions such as section 1104 (b). The evident intent in beginning section 1104 (e) with a reference to the "foregoing provisions" was to ensure that the creation of the privileges earlier in the statute would not be misinterpreted as precluding an emergency responder from being held accountable when he or she caused an accident while engaged in privileged conduct. If the Legislature had not cross-referenced the other statutory privileges and conditions in section 1104 (e), a case could be made that the privileges were absolute and that a driver was immune from suit whenever engaged in such exempt conduct. In other words, by referencing the "foregoing provisions" in section 1104 (e), the Legislature clarified that, notwithstanding its decision to exempt emergency responders from compliance with certain traffic laws, a driver could be liable for any "consequences" flowing from his or her reckless disregard for the safety of others regardless of whether the driver was or was not engaged in privileged conduct.

Plaintiff argues that an interpretation of section 1104 (e) that permits an emergency responder to receive the benefit of the reckless disregard standard regardless of the nature of his or her conduct renders the privileges articulated in section 1104 (b) superfluous. But this is not true. The privileges prevent police officers, firefighters and ambulance drivers from being prosecuted when they find it necessary to violate certain vehicle and traffic laws during emergency operations. Moreover, the privileges provide a significant benefit for drivers (and the state and municipal entities that are vicariously liable for their conduct) in civil actions. In the typical motor vehicle accident case, the fact that a driver failed to conform to a traffic law—particularly a driver's disregard of a traffic signal or the speed limit—would

constitute prima facie evidence of negligence, ensuring that the case would go to the jury and providing strong evidence in plaintiff's favor. Absent the section 1104 (b) privileges, conduct such as running through a red light—frequently found to be reckless when it occurs in other contexts—might be viewed as recklessness per se.

By creating the privileges, the Legislature has precluded a plaintiff from relying solely on the fact that an emergency responder drove through a red light or exceeded the speed limit to establish a prima facie case. Because the statute expressly permits this conduct, a plaintiff must offer additional evidence demonstrating why the emergency responder's actions rose to the "reckless disregard" standard under the circumstances presented. As noted above, our previous cases reflect that it is often the driver's "nonprivileged" conduct that is cited to prove the requisite heightened recklessness. There can be no doubt that the section 1104 (b) privileges are an important part of the statutory scheme—but there is no basis to conclude, as the majority has, that an emergency responder's participation in exempt conduct is a condition precedent to the application of section 1104 (e)'s reckless disregard standard.

### III.

Also unpersuasive is the majority's reliance on legislative history. None of the legislative history cited in the opinion reflects an intent to restrict the applicability of Vehicle and Traffic Law § 1104 (e)'s reckless disregard standard to the conduct specified in the section 1104 (b) privileges. The quoted passages express points about the statute that are not in dispute.[2] The legislative history confirms that section 1104 (b) "lists certain privileges

---

**2.** The same is true of the quotations from *Saarinen* cited in the majority opinion (*see* majority op at 229). In *Saarinen,* the Court observed that section 1104 "qualifiedly exempts [drivers of emergency vehicles] from certain traffic laws when they are 'involved in an emergency operation' " (84 NY2d at 497). This is an accurate observation about section 1104 (b) over which there is no controversy. The *Saarinen* Court further noted that section 1104 (e) "precludes the imposition of liability for otherwise privileged conduct except where the conduct rises to the level of recklessness" (*id.*). Again, we all agree that an emergency responder can be held liable under the reckless disregard standard even when he or she engages in privileged conduct. As the majority explains, the issue raised here was not presented in *Saarinen* so the Court never had the opportunity to address the crux of our disagreement—whether an emergency responder must engage in privileged conduct in order to gain the benefit of the heightened "reckless disregard" standard. But nothing in our *Saarinen* decision undermines my conclusion that qualified immunity is

accorded drivers of authorized emergency vehicles when responding to an emergency call or when in pursuit of an actual or suspected violator of the law" (*see* 1954 NY Legis Doc No. 36, at 35). And it clarifies

> "that the exemptions shall not be construed to relieve a driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall the grant of these privileges protect the driver from the consequences of his reckless disregard for the safety of others" (*id.* at 36-37).

This latter point is precisely why it was necessary for the Legislature to cross-reference the section 1104 (b) privileges in the "reckless disregard" provision. What the legislative history does not say is that the reckless disregard standard was intended to be applicable *only* when an emergency responder is engaged in privileged conduct.

Nor does the majority's reference to Vehicle and Traffic Law § 1103 (b), applicable to road workers, lend support to its conclusion. That provision was adopted in 1957 at the same time as section 1104, although the two provisions were originally very different (*see* L 1957, ch 698). Section 1103 (b) generally exempted vehicles engaged in road work from all rules of the road and it did not include a reckless disregard provision but instead was silent on the standard of care applicable to road workers. In contrast, in its original form, section 1104 permitted emergency responders to violate only specified vehicle and traffic laws, but it adopted a "reckless disregard" standard that provided some measure of protection against civil liability—just as it does today. The legislative history does not reveal why the drafters of these statutes initially took such different approaches to these classes of drivers.

The Legislature later concluded that the liability of road workers should be assessed in the same manner as emergency responders and, in 1974, it added "reckless disregard" language to section 1103 (b) (*see* L 1974, ch 223).[3] We held in *Riley v County of Broome* (95 NY2d 455 [2000]) that, in the wake of

---

not contingent on exercise of one of the section 1104 (b) privileges—and much of the analysis in that case supports it.

**3.** As the majority notes, section 1103 (b) was also amended in 1987 to clarify that road workers are not exempt from compliance with DWI and DWAI laws and may be prosecuted criminally for such violations (*see* L 1987, ch 528). It was obviously unnecessary to similarly amend section 1104 since

this amendment, road workers and emergency responders would now enjoy the same qualified immunity under the heightened "reckless disregard" standard. Reiterating the rationale behind limiting the liability of emergency responders that we had established in *Saarinen*, we noted that it was "unclear" whether the extension of the reckless disregard standard was "similarly justified" for road workers (*id*. at 467). Nonetheless, the Court concluded that "the Legislature ha[d] spoken clearly, giving vehicles engaged in road work the benefit of the same lesser standard of care as emergency vehicles" (*id*. at 468).

Given this observation, it is ironic that, relying in part on the language in Vehicle and Traffic Law § 1103 (b), the majority accepts a view of section 1104 (e) that grants road workers substantially broader protection from civil liability than is enjoyed by emergency responders. Since the majority keys the applicability of the reckless disregard standard to the exercise of privileged conduct, it has now excluded a category of emergency responder conduct from the qualified immunity umbrella. Because road workers are exempt from all of the provisions of the Vehicle and Traffic Law (except DWI and DWAI laws), the end result is that the "reckless disregard" standard will be applied to virtually all accidents involving vehicles engaged in road work but only a subset of accidents involving emergency responders. Nothing in the legislative history of either statute supports such a result.

## IV.

Finally, I am also troubled by the fact that the majority imposes its new limitation on the scope of the reckless disregard

that statute never exempted emergency responders from compliance with this category of laws. Based on the amendment to section 1103 (b), the majority extrapolates that emergency responders who engaged in such conduct would be subject to civil liability under an ordinary negligence standard (*see* majority op at 226 n 6). It is clear from the legislative history, however, that the amendment to section 1103 (b) was intended to facilitate criminal prosecution of road workers that violated DWI laws; there's no indication that it was meant to address the civil liability of intoxicated road workers—much less the civil liability of emergency responders. This amendment to another statute lends no support to the majority's claim that emergency responders should be subject to an ordinary negligence standard unless they are engaged in privileged conduct. Moreover, I think it likely that a plaintiff who proved that an emergency responder violated DWI or DWAI laws would have little difficulty establishing liability under the section 1104 (e) reckless disregard standard as few courses of conduct more clearly evince a conscious disregard for the safety of others than operating an emergency vehicle in an impaired or intoxicated condition.

standard without explaining how the standard is to be applied or responding in any way to the practical problems presented by its new rule, which are highlighted in the Appellate Division dissent and the briefs submitted by the amici. The questions the majority has chosen not to answer demonstrate the unworkable nature of the new rule. Does the liability standard fluctuate within the course of an emergency route depending on whether, at a particular moment, an officer is speeding or running a red light? Or is the reckless disregard standard triggered with respect to the entire emergency operation once the officer initiates that standard by violating one of the laws cited in section 1104 (b)? Is the jury to parse through the different acts of a driver that might have contributed to the accident, applying the reckless disregard standard to the conduct privileged under section 1104 (b) and the ordinary negligence standard to the remainder? How will the standard be applied when the accident is attributed to multiple causes, some involving privileged acts and some not? The majority doesn't say.

In this case, for example, the majority finds that Deputy DiDomenico's conduct must be assessed under the ordinary negligence standard since he took his eyes off the roadway when approaching the intersection and was not speeding or running a red light at the time. But what if DiDomenico had testified at his deposition that the light had been red when he and the plaintiff approached the intersection? Would he then be entitled to have his conduct assessed under the reckless disregard standard on the theory that he was attempting to run a red light when he caused the accident? What if DiDomenico had been driving one mile above the speed limit when he looked up and saw plaintiff's car? Would the jury apply the reckless disregard standard to all of his conduct or only to the speeding component, judging his momentary glance away from the roadway under the ordinary negligence standard?

One thing is certain—the majority's new rule will engender much confusion as litigants attempt to sort out these issues. It will also lead to an unusual shifting of positions: plaintiffs will now argue that the emergency responder that caused the accident scrupulously adhered to the rules of the road (meaning that liability should be determined under the ordinary negligence standard) while emergency responders will emphasize all the traffic laws they violated on the way to the accident (in an effort to gain the benefit of the reckless disregard standard). Indeed, one could say that the majority's rule encourages police

officers, firefighters and ambulance drivers to violate the rules of the road, thus ensuring that their actions will be assessed under the qualified immunity standard in Vehicle and Traffic Law § 1104 (e) in the event they are in an accident (we are all fortunate that the people attracted to jobs of this nature are not likely to be motivated by such self-interest). And it has created a situation where traffic violators are rewarded with greater protection than is available to those who conform to the rules of the road. I am confident that this was not what the Legislature had in mind when it adopted a statute meant to cloak emergency responders with qualified immunity. To this end, perhaps this case will provide the Legislature an opportunity to review the statute to assess whether revision is necessary to clarify its intent.

For all of these reasons, I would reverse the order of the Appellate Division and reinstate Supreme Court's judgment dismissing plaintiff's complaint.

Chief Judge LIPPMAN and Judges PIGOTT and JONES concur with Judge READ; Judge GRAFFEO dissents and votes to reverse in a separate opinion in which Judges CIPARICK and SMITH concur.

Order affirmed, etc.