Handelsman v Llewellyn (2022 NY Slip Op 04093)

Handelsman v Llewellyn

2022 NY Slip Op 04093

Decided on June 23, 2022

Appellate Division, First Department

KAPNICK, J.P. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 23, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Barbara R. Kapnick
Angela M. Mazzarelli David Friedman Ellen Gesmer Jeffrey K. Oing

Index No. 21177/12E Appeal No. 15542 Case No. 2021-00086 

[*1]Matthew I. Handelsman et al., Plaintiffs-Appellants,
v
Andrew L. Llewellyn et al., Defendants, The City of New York et al., Defendants-Respondents

Plaintiffs appeal from an order of the Supreme Court, Bronx County (Mitchell J. Danziger, J.), entered December 22, 2020, which, to the extent appealed from as limited by the briefs, granted defendants The City of New York, The New York City Police Department, and Patrick Jean's motion for summary judgment dismissing the complaint as against them and denied plaintiffs' motion for spoliation sanctions.

Kenneth J. Gorman and Jonathan Rice, Dobbs Ferry for appellants.
Georgia M. Pestana, Corporation Counsel, New York (Amy McCamphill and John Moore of counsel), for respondents.

KAPNICK, J.P. 

This personal injury action stems from a motor vehicle collision that occurred on November 17, 2011, between a vehicle being driven by defendant Andrew L. Llewellyn and a vehicle being driven/occupied by plaintiff Brian Hess, and his passenger, plaintiff Matthew Handelsman.
Plaintiffs commenced this action against Llewellyn, as well as the City of New York, The New York City Police Department (NYPD), and Patrick Jean (collectively, the City defendants), asserting causes of action for negligence and pursuant to General Municipal Law § 205-e. Plaintiffs claimed that the City defendants conducted a dangerous and reckless high-speed chase of Llewellyn, and that the chase was a proximate cause of their accident. The vehicle operated by the City defendants never came into contact with either plaintiffs' or Llewellyn's vehicle.
On this appeal, we are asked to decide if the City defendants were entitled to summary judgment on the issue of whether the operation of their unmarked police vehicle rose to the level of "reckless disregard" necessary for liability under Vehicle and Traffic Law § 1104. For the reasons set forth below, we conclude that the City defendants made a prima facie showing of entitlement to summary judgment, but that plaintiffs raised issues of fact. We also conclude that there are issues of fact concerning whether the City defendants' pursuit of Llewellyn was a proximate or a concurrent cause of the accident. Thus, we modify the motion court's decision to the extent it granted summary judgment to the City defendants but affirm the portion of the decision that denied plaintiffs' cross motion for spoliation.
On November 17, 2011, plaintiffs were in a Chevy Tahoe in the course of their employment with the Westchester County Police Department. Hess was operating the vehicle, his partner, Handelsman, was a front seat passenger, and a nonparty confidential informant was in the back seat. While in their car and traveling westbound on East 241st Street, plaintiffs observed a high-speed police chase unfolding between the City defendants and Llewellyn's BMW in the area of the Wakefield Avenue Bridge. The pursuit was through a residential and highly populated area with moderate to heavy traffic and numerous pedestrians.
Plaintiffs observed the BMW fleeing from the NYPD vehicle at a speed of between 80 and 100 miles per hour with the NYPD vehicle [*2]in close pursuit. They observed the NYPD vehicle follow the BMW as the BMW crossed over the double yellow lines into oncoming traffic, and observed both vehicles running red lights on East 241st Street while traveling eastbound toward plaintiffs' location. They also observed the NYPD vehicle activate its flashing lights while continuously pursuing the BMW on East 241st Street and over the bridge, and noted that it was never further than two car lengths behind the BMW. Plaintiffs opined that "[t]he BMW lost control while trying to escape the police car and crashed into [their] vehicle".
According to the testimony of the NYPD officers, Sergeant Jason Korpolinski was operating the undercover NYPD police vehicle and Sergeant Eric Downes [FN1] and defendant officer Jean were passengers. After they observed Llewellyn in his BMW run a steady red light on East 241st Street, they commenced their pursuit of him with emergency lights activated until the Wakefield Avenue Bridge area.
According to the NYPD officers, they observed the BMW hit plaintiffs' car head on as they reached the "crest" of the bridge which was located on the westbound side of the street; they also observed that plaintiffs' vehicle was not pulled over entirely into the parking lane. Sergeant Korpolinski testified that they were not keeping up with Llewelyn's speed and that at the time of the accident, their vehicle was at a safe distance from the BMW. Lieutenant Downes testified that he made the decision to terminate the pursuit at some point because of the BMW's speed and the risk of danger to other motorists and pedestrians. He also testified that he did not consider the NYPD car to be in a "pursuit" because it did not follow the BMW for an extended period of time or drive at a high speed.
According to Llewellyn's testimony, at the time of the accident he was speeding and driving recklessly because he was fleeing from another driver who had pulled a gun and pointed it at him, not because of the NYPD vehicle following him. He testified that plaintiffs' vehicle was speeding and actually collided into his car, and that at the time of the accident he had been at a complete stop, which no one else corroborates. He stated that the NYPD vehicle was not close to his car. Llewellyn ultimately pleaded guilty to reckless driving. The driver who had allegedly chased and threatened Llewellyn was never identified.
Vehicle and Traffic Law § 1104(a) provides that "[t]he driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise the privileges set forth in this section, but subject to the conditions herein." These privileges include, in relevant part, "passing through red lights and stop signs, exceeding the speed limit and disregarding regulations governing the direction of movement or turning in specified directions" (Frezzell v City of New York, 24 NY3d 213, 217 [2014], citing Vehicle and Traffic Law § 1104[a], [b]). However, the privileges afforded by Vehicle [*3]and Traffic Law § 1104 are circumscribed by subsection (e) of the statute, which provides that "[t]he foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others" (Vehicle and Traffic Law § 1104[e]; see Saarinen v Kerr, 84 NY2d 494, 501 [1994]).
The reckless disregard standard "requires evidence that 'the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome" (Saarinen, 84 NY2d at 501, quoting Prosser & Keeton, Torts § 34 at 213 [5th ed]). Thus, the police are privileged in making "conscious choices that will necessarily escalate the over-all risk to the public at large in the service of an immediate, specific law enforcement or public safety goal" (Saarinen, 84 NY2d at 502).
On the issue of reckless disregard,
"parties may be found to have acted in violation of the statutory formulation when they consciously—and, thus, with general intentionality, not necessarily with intent to cause particular injury—disregard known serious risks of harm. The decision to ignore a grave risk, which is likely to result in harm to others, may satisfy the intentional aspect sufficient to impose liability" (Campbell v City of Elmira, 84 NY2d 505, 510-511 [1994]).
Whether the reckless disregard standard is met is a "fact-specific inquiry" that focuses on "the precautionary measures taken by [the officer] to avoid causing harm to the general public weighed against his [or her] duty to respond to an urgent emergency situation" (Frezzell, 24 NY3d at 217-218). Where there are factual issues as to whether the defendants acted in reckless disregard for the safety of others and there are credibility issues in dispute, then the inquiry should be left to a jury to decide(see Campbell, 84 NY2d at 508).
In determining whether an officer operating a police vehicle acted with reckless disregard for the safety of others and ignored a grave risk that is likely to result in harm to others under the circumstances, courts consider the nature of the offense that prompted the pursuit, the conditions of the roadways or area where the pursuit occurred that added to the risk, the speed of the police vehicle, and whether police procedures have been followed, including whether the police officers made a call to headquarters to alert them about the chase (see e.g. Rockhead v Troche, 17 AD3d 118, 119 [1st Dept 2005] [finding triable issues where the police chased a car through a solid red light in a heavily trafficked residential area, resulting in the chased vehicle crashing into an innocent bystander vehicle]; Ferrara v Village of Chester, 57 AD3d 719, 720 [2d Dept 2008] [finding an issue of fact [*4]as to "whether the principal pursuing officer properly informed the central dispatcher of the location of the suspect's vehicle and whether the suspect was operating his headlights," and whether the pursuit was recklessly initiated "given the minor offenses the suspect was thought to have committed" or continued "in light of the fact that it was conducted at high speeds on curving narrow roads, through a construction zone and into oncoming traffic"]; Lopez v Town of Gates, 249 AD2d 934 [4th Dept 1998] [finding issues of fact where plaintiffs submitted evidence that the officers' average speed during a pursuit through a business district exceeded 90 miles per hour]).
Here, the motion court properly held that the reckless disregard standard applied in evaluating the City defendants' conduct in pursuing Llewellyn (see Vehicle and Traffic Law §§ 1104[b], 1104[e]). However, the motion court erred in determining that "there is no evidence that the NYPD officers acted recklessly as a matter of law, and that the pursuit was not the proximate cause or a concurrent cause of this incident" (emphasis added).
The City defendants presented evidence that their officers travelled at a safe speed and distance from the BMW in their pursuit of Llewellyn. Downes testified that as the supervising officer, he made the decision to follow Llewellyn's car, and as noted above, later made the decision to stop following the BMW because of its speed and the risk of danger to other motorists and pedestrians at some point prior to the accident. He also testified that he did not consider the NYPD car to be in a pursuit because it did not follow the BMW for an extended period of time or drive at a high rate of speed. Llewellyn's testimony was in accord with the NYPD officers' account of their vehicle's speed and proximity to the BMW.
Plaintiffs, however, in opposition, submitted evidence that the City defendants initiated a high-speed chase of Llewellyn's BMW at close proximity after observing it run a single red light, and continued the high-speed chase, which included crossing over a double yellow line and running two red lights, in a known congested and heavily populated residential area which at the time of the pursuit had moderate to heavy traffic and numerous pedestrians. The motion court's finding that there was "no testimony . . . that the NYPD officers knew of obvious risks in their pursuit of Mr. Llewellyn and disregarded the same" ignored much of the testimony in the record. NYPD officers Downes and Korpolinski both acknowledged in their testimony that 241st Street was a heavily travelled and highly populated area.
Plaintiffs also raised an issue of fact concerning whether the NYPD officers acted recklessly in failing to notify the radio dispatcher at the start of the pursuit and inform headquarters with relevant information, including the nature of the offense. The City defendants asserted that their failure to notify headquarters of their conduct in following [*5]Llewellyn was not reckless under the circumstances, including the fact that Sergeant Downes, their supervisor, was in the vehicle at the time.
As such, plaintiffs raised a triable issue of fact concerning whether the City defendants acted recklessly under the circumstances of this case, which warranted the denial of the City defendants' motion for summary judgment.
In addition, there are issues of fact concerning whether the pursuit was a proximate cause or a concurrent cause of the accident. The motion court gave undue weight to Llewellyn's testimony that he was speeding away from a driver with a gun, as no such car or driver was ever located, and that the NYPD police car was not in close proximity to his BMW. At the same time, the motion court seemingly gave little credence to the conflicting testimony of plaintiffs and nonparty witnesses that the accident was caused because Llewellyn lost control of his car trying to escape the NYPD vehicle, that Llewellyn's car crashed into plaintiffs' car, that the NYPD car was travelling as fast as the BMW reaching speeds of up to 100 mph, and that the NYPD car was right behind the BMW throughout the pursuit until the accident.
The City defendants argue that "[p]laintiffs' testimony that the NYPD vehicle was traveling 80 to 100 miles per hour, less than two car lengths behind Llewellyn's BMW until the moment of the sudden crash, is frankly incredible, since it is physically impossible for a car traveling over 80 miles per hour to stop on a dime." The motion court appears to have accepted this argument while discounting plaintiffs' argument that Llewellyn's testimony was "incredible," and finding "Llewellyn's story [to have been] consistent for the duration of this suit." However, "[i]t is not the court's function on a motion for summary judgment to assess credibility" (see Ferrante v American Lung Assn., 90 NY2d 623, 631 [1997]).
There are also other credibility issues concerning Llewellyn's testimony. At Llewellyn's deposition, when asked whether he has "some grievance against the police officers in the SUV that you want to shoot down their case, because you feel that they did something wrong," he responded, "Yeah, I'm angry about it." Further, the confidential informant testified that Llewellyn contacted him after plaintiffs' accident and asked him to say that he observed plaintiffs' SUV drive up onto the BMW and that the SUV was the one that chased his vehicle and caused the accident. For all these reasons, the City defendants' motion for summary judgment dismissing the complaint must be denied.
However, plaintiffs did not make the requisite showing that would entitle them to spoliation sanctions (see Mohammed v Command Sec. Corp., 83 AD3d 605, 605 [1st Dept 2011], lv denied 17 NY3d 708 [2011]). The City defendants' discovery response advised that while the NYPD vehicle being operated on the date of the accident was disposed of following an unrelated accident, the vehicle's system only recorded accidents[*6], and thus there would have been no data in its recording system relative to plaintiffs' claims, which stem from a collision with Llewellyn's vehicle. Plaintiffs took no action in response, and instead filed their note of issue certifying that all discovery sought had been provided. The issue of the records was raised only in response to the City defendants' summary judgment motion.
Accordingly, the order of the Supreme Court, Bronx County (Mitchell J. Danziger, J.), entered December 22, 2020, which, to the extent appealed from as limited by the briefs, granted defendants The City of New York, The New York City Police Department, and Patrick Jean's motion for summary judgment dismissing the complaint as against them and denied plaintiffs' motion for spoliation sanctions should be modified, on the law, to deny the City defendants' motion, and otherwise affirmed, without costs.
Order, Supreme Court, Bronx County (Mitchell J. Danziger, J.), entered December 22, 2020, modified, on the law, to deny the City defendants' motion, and otherwise affirmed, without costs.
Opinion by Kapnick, J. All concur.
Kapnick, J.P., Mazzarelli, Friedman, Gesmer, Oing, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 23, 2022

Footnotes

Footnote 1: Sergeant Downes was later promoted to Lieutenant.