================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 188
Kent Frezzell,
          Appellant,
        v.
City of New York, et al.,
          Respondents.

          Jay L. T. Breakstone, for appellant.
          Victoria Scalzo, for respondents.

GRAFFEO, J.:

          On this appeal, we are asked if defendants were

entitled to summary judgment on the issue of whether the police

officer's operation of his patrol vehicle rose to the level of

'reckless disregard' necessary for liability under Vehicle and

Traffic Law § 1104.  We conclude that defendants met their burden

- 1 -

and plaintiff failed to raise a triable issue of fact.  We therefore affirm the Appellate Division order.

On September 20, 2006, around 10:00 p.m., New York City police officer Steve Tompos and his partner Richard Brunjes were patrolling in Central Park when they received an urgent radio call from a fellow officer indicating that he was engaged in a foot pursuit of a man with a gun near a public housing development a few blocks away and needed assistance.  According to Tompos, within seconds of the radio transmission, Brunjes "threw the master switch" to activate the vehicle's lights and turned on the siren.  Tompos drove the patrol car from the park to Columbus Avenue and continued north against the legal flow of traffic.  At the first intersection, Tompos turned left onto West 104th Street, heading eastbound on the westbound one-way street.

Plaintiff Kent Frezzell and his partner, both on-duty police officers, responded to the same radio call.  Frezzell was driving his patrol vehicle westbound on West 104th Street when the vehicle operated by Tompos headed down the same street in the opposite direction.  Frezzell and Tompos saw each other's vehicles just seconds before impact and both attempted evasive maneuvers.  The resulting collision caused injuries to the occupants of both cars.

Frezzell subsequently commenced this action against Tompos and the City of New York, asserting a General Municipal Law § 205-e claim predicated upon violations of Vehicle and

Traffic Law § 1104.[1]  Following discovery, Tompos and the City moved for summary judgment, requesting dismissal of the cause of action under the 'reckless disregard' standard of Vehicle and Traffic Law § 1104 that applied to the evaluation of Frezzell's claim.  Tompos and the City supported their motion with accident reports, witness statements, the transcript of Frezzell's General Municipal Law § 50-h hearing testimony, and the deposition transcripts of the parties and vehicle occupants.  In opposition, Frezzell proffered an affidavit explaining how the accident occurred and submitted one accident report.

Supreme Court granted Tompos's and the City's motion, emphasizing that Tompos's vehicle was traveling at only 15 to 20 miles per hour at the time of the accident and that Tompos had attempted to avoid colliding with the vehicle operated by Frezzell.  The court concluded that "[a]t best, . . . [Frezzell] has alleged mere negligence, which under . . . Vehicle and Traffic Law [§ 1104 (e)] is not sufficient."

The Appellate Division affirmed, with two Justices dissenting (105 AD3d 620 [1st Dept 2013]).  The majority determined that "Tompos . . . did not act in 'reckless disregard for the safety of others' while operating his vehicle" and highlighted testimony supporting the assertion that the emergency lights and siren had been activated in the patrol car, Tompos had

_____

[1]  Frezzell asserted other causes of action in his complaint that have been disposed of on other grounds and which are not at issue on this appeal.

reduced his speed while turning onto West 104th Street, and he veered away from Frezzell's vehicle in an attempt to prevent the accident (id. at 620). Holding that Frezzell did not raise any triable issues of fact in the absence of non-speculative evidence that Tompos's view was obstructed or that he was speeding, the majority held that Tompos and the City were entitled to summary judgment dismissing the complaint (see id. at 621-622).

The dissenters would have denied dismissal of the complaint on the basis of issues of fact, surmising that a reasonable jury could have found that the circumstances surrounding Tompos's entry onto West 104th Street evinced a reckless disregard for the safety of others (see id. at 623 [Manzanet-Daniels, J., dissenting]). More particularly, the dissent identified questions concerning whether an emergency services unit (ESU) vehicle obstructed Tompos's view of the intersection and whether Tompos or his partner had turned on the emergency lights and siren (see id. at 622).

Plaintiff now appeals to this Court as a matter of right, pursuant to CPLR 5601 (a).

Vehicle and Traffic Law § 1104 grants the driver of an authorized emergency vehicle special driving privileges when involved in an emergency operation. Those privileges include passing through red lights and stop signs, exceeding the speed limit and disregarding regulations governing the direction of movement or turning in specified directions (see Vehicle and

Traffic Law § 1104 [a], [b]).  But drivers of emergency vehicles are not relieved of their duty to drive "with due regard for the safety of all persons" and section 1104 does not "protect the driver from the consequences of his reckless disregard for the safety of others" (Vehicle and Traffic Law § 1104 [e]).

This "reckless disregard" standard demands "more than a showing of a lack of 'due care under the circumstances'--the showing typically associated with ordinary negligence claims" (Saarinen v Kerr, 84 NY2d 494, 501 [1994]).  Rather, for liability to be predicated upon a violation of Vehicle and Traffic Law § 1104, there must be evidence that "'the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome" (id., quoting Prosser and Keeton, Torts § 34, at 213 [5th ed]).  This heightened standard is grounded in the Legislature's recognition that, although the exercise of the privileges granted in section 1104 may increase the risks to pedestrians and other drivers, emergency personnel "should be afforded a qualified privilege to disregard [certain traffic] laws where necessary to carry out their important responsibilities" (Saarinen, 84 NY2d at 502).  This approach avoids "judicial 'second-guessing' of the many split-second decisions that are made in the field under highly pressured conditions" and mitigates the risk that possible liability could

"deter emergency personnel from acting decisively and taking calculated risks in order to save life or property or to apprehend miscreants" (id.).

It is undisputed that Tompos's act of driving against the flow of traffic on West 104th Street is privileged and must be reviewed under the heightened 'reckless disregard' standard of Vehicle and Traffic Law § 1104 (e). Whether the standard was met here is a fact-specific inquiry and our analysis is focused on the precautionary measures taken by Tompos to avoid causing harm to the general public weighed against his duty to respond to an urgent emergency situation (see Szczerbiak v Pilat, 90 NY2d 553, 557 [1997]; Campbell v City of Elmira, 84 NY2d 505, 512 [1994]; Saarinen, 84 NY2d at 503).

On this record, we conclude that Tompos and the City met their burden of establishing that the officer's conduct did not amount to reckless disregard of a highly probable risk of harm "with conscious indifference to the outcome" (Saarinen, 84 NY2d at 501). The evidence revealed that Tompos slowed down as he turned on West 104th Street and was driving below the speed limit on a clear and dry evening when the accident occurred. Furthermore, the testimony of Tompos and Brunjes established that their vehicle was moving at a speed between 10 and 25 miles per hour in a 30-mile-per-hour zone. Frezzell's allegation that Tompos was traveling at a "high rate of speed" is insufficient to create a material question of fact in light of his admission that he could not estimate Tompos's speed or "what [Tompos's vehicle]

was doing."  In addition, both Tompos and Brunjes testified as to
the preventative measures Tompos took to avoid the collision,
namely braking hard and veering to the side of the street.
Frezzell introduced no proof contradicting these assertions.

Furthermore, the record in this case does not support
Frezzell's contention that there are triable issues of fact
regarding whether Tompos's vehicle was using its emergency lights
and siren at the time of the accident.  Although Brunjes did not
specifically recall having turned on the lights and siren when
they responded to the call, Tompos unequivocally stated several
times that Brunjes had done so and that these signals remained in
operation.  Nor did Frezzell contradict this testimony since he
could not state whether he observed the lights and siren on
Tompos's vehicle.  Despite evidence that an accident report did
not indicate that the patrol car's siren was set to "constant" --
as opposed to intermittent -- use, this alone does not rise to
the level of recklessness, particularly in light of the testimony
that sirens were heard from "[e]very different direction" prior
to the collision.  Moreover, section 1104 statutorily exempts
police vehicles from the requirement that audible signals be
emitted while an emergency vehicle is in motion (see Vehicle and
Traffic Law § 1104 [c]).

Frezzell relies heavily on a report indicating that
Tompos may have had to negotiate around a parked ESU vehicle on
West 104th Street and contends that this obstacle obstructed

Tompos's view when he turned onto the road.  Yet, Frezzell saw
Tompos's vehicle drive down Columbus Avenue and turn onto West
104th Street, indicating that the line of vision was not
completely obstructed.  In any event, Frezzell and Tompos both
claimed that the accident occurred "three or four car-lengths" or
"several" car-lengths down the street -- not at the corner of the
intersection.  If Tompos had to maneuver around a parked ESU
truck further down the street, this amounted, at most, to
negligence, not reckless disregard for the safety of others,
particularly when viewed in light of the seriousness and
immediacy of the situation to which Tompos was responding (see
Szczerbiak, 90 NY2d at 557; Saarinen, 84 NY2d at 502-503).

Nor may liability in this case be predicated upon the
decision by Tompos and Brunjes to respond to their fellow
officer's call for help in apprehending an armed and fleeing
suspect.  Plaintiff argues that Tompos and Brunjes were reckless
in joining the pursuit because it originated outside of their
assigned patrol area and they allegedly failed to alert other
officers in the vicinity to their location.  But whether Tompos
should have responded at all is an issue beyond the scope of
Vehicle and Traffic Law § 1104.  Frezzell did not identify any
policy or departmental rule or regulation that Tompos's decision
to join the pursuit violated, and both Tompos and Brunjes
asserted that they had responded to emergency calls outside of
their designated precinct boundaries on other occasions and were

unaware of any policy prohibiting such conduct.

In the absence of any material questions of fact regarding whether Tompos was speeding in poor road or traffic conditions, was inattentive, or otherwise proceeded in an unreasonably dangerous manner without caution or care for the safety of bystanders and motorists, it cannot be said that Tompos acted with "conscious indifference to the outcome" (Saarinen, 84 NY2d at 501; see Szczerbiak, 90 NY2d at 557; Quock v City of New York, 110 AD3d 488, 489 [1st Dept 2013]; compare Campbell, 84 NY2d at 508, 511-512 [disputed issues of fact concerning whether fire truck driver checked the color of the traffic light, looked for oncoming traffic, accelerated, or utilized emergency signals when crossing intersection against the right of way]). Defendants were therefore entitled to summary judgment (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).

***

Accordingly, the Appellate Division order should be affirmed, with costs.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed, with costs. Opinion by Judge Graffeo. Chief Judge Lippman and Judges Read, Smith, Pigott, Rivera and Abdus-Salaam concur.

Decided November 20, 2014