# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 16
Courtney Anderson,
      Respondent,
     v.
Commack Fire District,
       Appellant,
et al.,
      Defendants.

Timothy C. Hannigan, for appellant.
Scott Szczesny, for respondent.
Association of Fire Districts of the State of New York, amicus curiae.

CANNATARO, J.:

In recognition of the unique responsibilities placed on fire truck and other

emergency vehicle operators to respond quickly to calls for aid, Vehicle and Traffic Law

§ 1104 grants such drivers the "privilege" to proceed past red lights when involved in

emergency operations, as long as specified safety precautions are observed and they do not act recklessly (*see* Vehicle and Traffic Law § 1104 [a]-[c], [e]).  As pertains to volunteer fire companies, General Municipal Law § 205-b makes fire districts[1] vicariously liable "for the negligence of volunteer firefighters" when they operate fire district vehicles in the discharge of their duties.  The question presented on this appeal is whether these statutes authorize a claim against a fire district for the "negligence" of a volunteer firefighter when the firefighter's actions are otherwise privileged and subject to a heightened recklessness standard under Vehicle and Traffic Law § 1104.  We hold that imposition of vicarious liability for a driver's negligence in this context would be contrary to legislative intent, this Court's precedent, and general principles of negligence law and vicarious liability.

I.

Plaintiff commenced this personal injury action after her vehicle collided with a fire truck owned by defendant Commack Fire District (the District) and operated by a District volunteer firefighter.  The accident occurred at an intersection controlled by a traffic light which, at the time of the accident, was illuminated green in plaintiff's direction and red in the fire truck's direction.  Following discovery, defendants moved for summary judgment, arguing that neither the firefighter nor the District were liable because the firefighter's

---

[1] A fire district is a political subdivision of the State whose employees may include paid and volunteer firefighters (*see* Town Law § 174 [7]).

actions were privileged under Vehicle and Traffic Law § 1104 and were not otherwise reckless.

Based on undisputed testimony that the firefighter was responding to an alarm of fire, had activated the fire truck's lights and sirens, stopped the fire truck before entering the intersection, and proceeded slowly through the red light, Supreme Court held that the firefighter had "established prima facie entitlement to the exemption in Vehicle and Traffic Law § 1104," and that plaintiff had failed to raise a triable issue in opposition as to whether the firefighter acted with reckless disregard. The court therefore granted summary judgment to the firefighter. However, the court reached a different result with respect to the vicarious liability of the District. Relying on General Municipal Law § 205-b, "which states, in part, that 'fire districts created pursuant to law shall be liable for the negligence of volunteer firefighters,'" the court concluded that questions of fact existed regarding whether the firefighter "was negligent in failing to see plaintiff's vehicle approaching," and, thus, the District was not entitled to summary judgment.

The District appealed and a divided Appellate Division affirmed.[2] The majority held that the District "was not limited to liability for conduct rising to the level of 'reckless disregard' under Vehicle and Traffic Law § 1104(e), and could be held liable for the ordinary negligence of a volunteer firefighter operating the . . . vehicle" under General Municipal Law § 205-b (195 AD3d 779, 780 [2d Dept 2021]). The dissent concluded that

---

[2] Plaintiff did not appeal from the portion of Supreme Court's order that granted summary judgment to the firefighter.

Supreme Court should have applied the reckless disregard standard to determine the District's vicarious liability (*id.* at 781 [Barros, J., dissenting]).  The Appellate Division granted the District leave to appeal to this Court.  We now reverse.

II.

A.

Determination of how General Municipal Law § 205-b and Vehicle and Traffic Law § 1104 interact in this context requires examination of the history and purposes of those statutes and related provisions.

Prior to 1929, local subdivisions of the State enjoyed sovereign immunity from liability, and thus were not vicariously liable for injuries caused by the negligence of their firefighters (*see Miller v Irondequoit*, 243 AD 240, 241-242 [4th Dept 1935], *affd without op*, 268 NY 578 [1935]; *Snyder v Binghamton*, 138 Misc 259, 260 [Sup Ct, Broome Cnty 1930], *affd without op*, 233 App Div 782 [3d Dept 1931]).[3]  That year, in response to rising criticism against sovereign immunity and the growth of motorized transportation, the Legislature began to enact a series of statutes to "creat[e] a partial remedy, at least so far as the operation of [government] owned vehicles is concerned, in behalf of those who were then without any redress" (*see Ottmann v Rockville Ctr.*, 273 NY 205, 207 [1937]; *see also Poniatowski v New York*, 14 NY2d 76, 80 [1964]).  First, in Highway Law § 282-g—later

---

[3] Although the State waived its immunity from liability in 1929 in Court of Claims Act § 8, this waiver was not found to be applicable to the local subdivisions of the State until 1945 (*see Thomas v Consol. Fire Dist. No. 1*, 50 NY2d 143, 146 [1980]).

re-enacted as General Municipal Law §§ 50-a, 50-b, and 50-c—the Legislature provided that a municipality is vicariously liable "for the negligence" of its duly-appointed agents when they operate municipally owned vehicles in the discharge of their duties (*see Poniatowski*, 14 NY2d at 80).

Fire districts remained immune until 1934, when the Legislature enacted General Municipal Law § 205-b (L 1934, ch 489).  As relevant here, that statute (i) broadly relieved volunteer firefighters from civil liability for negligent acts committed in the performance of their duties, which was considered "unfair and unjust" given their lack of compensation (Assembly Mem in Support, Bill Jacket, L 1934, ch 489, at 3), and (ii) harmonized the vicarious liability of fire districts with that of municipalities by providing that a fire district shall be liable "for the negligence of [its] volunteer firefighters" when they operate fire district-owned vehicles in the discharge of their duties (General Municipal Law § 205-b; *see* Letter from Fireman's Assn. of State of NY, Apr 28, 1934, *id.* at 4).

B.

Two decades later, in 1957, the Legislature enacted what is now title VII of the Vehicle and Traffic Law—a collection of provisions "intended to create a uniform set of traffic regulations, or the 'rules of the road' to update and replace the former traffic regulations, and bring them into conformance with the Uniform Vehicle Code adopted in other states" (*Kabir v County of Monroe*, 16 NY3d 217, 222 [2011] [quotation marks, brackets, and ellipsis omitted]).

In enacting title VII, the Legislature recognized that drivers of emergency vehicles have a "primary obligation to respond quickly to preserve life and property" which can "conflict with the rules and laws that are intended to regulate citizens' daily conduct," and, consequently, such drivers should be permitted "to disregard those laws where necessary to carry out their important responsibilities" (*Saarinen v Kerr*, 84 NY2d 494, 497, 502 [1994]). The applicable definition of an emergency vehicle specifically encompasses fire trucks "owned by . . . fire district[s]."[4] Vehicle and Traffic Law § 1104 grants the drivers of such vehicles "privileges" to disobey certain traffic laws when they are "involved in an emergency operation"[5] (*see* Vehicle and Traffic Law § 1104 [a]). One such privilege permits the driver of a fire truck responding to an alarm of fire to "[p]roceed past a steady red signal" as long as certain safety precautions are observed (*see* Vehicle and Traffic Law § 1104 [b] [2]; *Saarinen*, 84 NY2d at 499-500). Specifically, this privilege is available only if the driver "slow[s] down as may be necessary for safe operation" and makes prescribed use of sirens and lights (Vehicle and Traffic Law § 1104 [b] [2] & [c]).

---

[4] The statute applies "to drivers of all vehicles owned or operated by the United States, this state, or any county, city, town, district, or any other political subdivision of the state" (Vehicle and Traffic Law § 1103 [a]). The term "authorized emergency vehicle" is defined to include a "fire vehicle" (*id.* § 101), which, in turn, is defined to mean, in pertinent part, "[e]very vehicle operated for fire service purposes owned and identified as being owned by the state, a public authority, a county, town, city, village *or fire district . . .*" (*id.* § 115-a [emphasis added]).

[5] "Emergency operation" is defined to mean, in pertinent part, "[t]he operation . . . of an authorized emergency vehicle, when such vehicle is engaged in . . . responding to, or working or assisting at the scene of an . . . alarm of fire . . ." (Vehicle and Traffic Law § 114-b).

Vehicle and Traffic Law § 1104 (e) states that the provisions outlined above "shall not relieve the driver . . . from the duty to drive with due regard for the safety of all persons, nor . . . protect the driver from the consequences of his reckless disregard for the safety of others." As this Court has previously explained, section 1104 (e) makes conduct that is *privileged* under the statute subject to a recklessness standard (*Saarinen*, 84 NY2d at 497, 500-503), but leaves in place the ordinary negligence standard of care for *unprivileged* conduct (*Kabir*, 16 NY3d at 220, 228-231). Thus, for example, when drivers are not involved in emergency operations, they must operate their vehicles pursuant to the normal rules of the road and with the same reasonable care as other drivers (*see id.* at 230-231*; Modica v City of New York*, 193 AD3d 845, 846 [2d Dept 2021]; *Chessey v City of New York*, 88 AD3d 625, 625 [1st Dept 2011]). In contrast, when section 1104 is fully satisfied, drivers' actions are privileged and governed by a "reckless disregard" standard (*see Saarinen*, 84 NY2d at 500-503).

The "reckless disregard" standard demands "more than a showing of a lack of 'due care under the circumstances'—the showing typically associated with ordinary negligence claims" (*Saarinen*, 84 NY2d at 501). Rather, "there must be evidence that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome" (*Frezzell v City of New York*, 24 NY3d 213, 217 [2014] [quotation marks omitted]). This standard effectuates legislative intent by "avoid[ing] 'judicial second-guessing of the many split-second decisions that are made in

the field under highly pressured conditions' and mitigat[ing] the risk that possible liability could 'deter emergency personnel from acting decisively and taking calculated risks in order to save life or property'" (*id.*, quoting *Saarinen*, 84 NY2d at 502).

## III.

Considering the text, history, and legislative purpose of the two statutes at issue, we hold that the reckless disregard standard set forth in Vehicle and Traffic Law § 1104 (e) applies when a fire district is alleged to be vicariously liable for conduct that is privileged under that statute.

A few basic principles of negligence law and vicarious liability are helpful to our analysis of this question. First, it is black letter law that an essential element of a negligence claim is the breach of a duty (*see Ferreira v City of Binghamton*, 38 NY3d 298, 308 [2022]). Second, while "liability in negligence is normally premised on a defendant's fault," *vicarious* liability is "impute[d] . . . to a defendant for another person's fault" (*Feliberty v Damon*, 72 NY2d 112, 117-118 [1988]). A fire district's liability under General Municipal Law § 205-b "for the negligence of volunteer firefighters" is vicarious in nature (*see* General Municipal Law § 205-b). Consequently, the focus of our analysis must be on the duties of the volunteer firefighter—specifically, whether the firefighter owed plaintiff a duty not to engage in the conduct which caused her injury.

General Municipal Law § 205-b recognizes that volunteer firefighters can violate ordinary duties of care in the broad course of their "operation of vehicles owned by the fire district upon the public streets and highways of the fire district" (*id.*). The statute does not,

however, purport to delineate the duties volunteer firefighters actually owe in any particular situation, much less when they operate emergency vehicles in response to an alarm of fire. That was not the statute's purpose. As the dissenting Justice at the Appellate Division correctly recognized, section 205-b "functions merely as a liability shifting statute, and does not purport to define the rules of the road or the standard of care to be applied in any particular circumstance"[6] (*see Anderson*, 195 AD3d at 782 [Barros, J., dissenting]).

The "carefully calibrated" provisions of Vehicle and Traffic Law § 1104 were enacted twenty years after General Municipal Law § 205-b specifically to clarify the duties of emergency vehicle drivers when involved in emergency operations (*see Campbell v City of Elmira*, 84 NY2d 505, 512 [1994]). As noted above, section 1104 was enacted because the Legislature saw a "conflict" between rules and laws "intended to regulate [all drivers'] daily conduct" and the "primary obligation" of emergency vehicle drivers to respond quickly to protect lives and property (*see Saarinen*, 84 NY2d at 497, 502). Section 1104 grants emergency vehicle drivers "qualified privileges" to "disregard" the duties imposed by conflicting laws and to operate their vehicles in ways that ordinary members of the

---

[6] By "liability shifting," we mean that section 205-b changed the party legally responsible when a volunteer firefighter commits ordinary negligence. As discussed above, prior to the statute's enactment, volunteer firefighters themselves were personally liable for their own negligence, and fire districts were believed to be protected from vicarious liability by sovereign immunity. The statute "shift[ed]" the applicable rules by eliminating the immunity fire districts enjoyed from vicariously liability for their volunteer firefighters' ordinary negligence in the operation of fire district vehicles, and granted volunteer firefighters statutory immunity from personal liability for ordinary negligence.

public—and even these same drivers in non-emergency situations—cannot (*see id.* at 502; Vehicle and Traffic Law § 1104 [a]-[b]).  The legal definition of a "privilege" is

> "[a] special legal right, exemption, or immunity granted to a person or class of persons; *an exception to a duty*.  A privilege grants someone the legal freedom to do or not to do a given act" ("Privilege," Black's Law Dictionary [11th ed. 2019] [emphasis added]).

Section 1104 (e) further expressly establishes a reckless disregard standard "for determining . . . civil liability for damages resulting from the privileged operation of an emergency vehicle" (*Saarinen*, 84 NY2d at 499-501).[7]

In short, section 1104 does more than simply immunize firefighters from negligence liability for otherwise privileged conduct (*compare* dissenting op at 2, 10).   It modifies their underlying duties in the defined contexts by (i) permitting categories of conduct which would violate other drivers' ordinary duty of care, (ii) specifying particular safety precautions which must be observed when engaging in such conduct, and (iii) requiring emergency vehicle drivers to avoid recklessness even when engaged in the privileged conduct.  When a volunteer firefighter's actions satisfy all of these conditions and thus are privileged, there is simply no breach of duty or negligence which can be imputed to a fire district under General Municipal Law § 205-b.

---

[7] The imposition of a heightened standard in this context is consistent with common law (*see Eckert v Long Is. R. Co.*, 43 NY 502, 506 [1871] ["The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons"]).

The dissent reaches a different conclusion based primarily on the observation that Vehicle and Traffic Law § 1104 regulates emergency vehicle drivers and does not specifically reference fire districts, whereas General Municipal Law § 205-b expressly makes fire districts liable "for the negligence of volunteer firefighters" (*see* dissenting op at 5). In the dissent's view, because section 1104 does not mention fire districts, it cannot govern their vicarious negligence liability (*id.*). As discussed, however, the vicarious liability of a principal depends on the duties owed by the agent (*see generally Feliberty*, 72 NY2d at 117-118). Because Vehicle and Traffic Law § 1104 establishes the duties of volunteer firefighters in this specific context—and is also the later-enacted statute—it is indispensable to understanding the scope of a fire district's vicarious negligence liability under General Municipal Law § 205-b.

The dissent's failure to properly account for the privileges granted to volunteer firefighters under Vehicle and Traffic Law § 1104 causes it to adopt an interpretation under which a fire district assumes vicarious liability for conduct that does not actually breach any underlying duty and therefore is not tortious. Nothing in General Municipal Law § 205-a supports such an interpretation.[8]

---

[8] The dissent observes that under General Municipal Law § 205-b, volunteer firefighters remain liable for "wilful negligence or malfeasance," demonstrating that "it is possible for a volunteer firefighter and the fire district both to be liable for the firefighter's conduct based on different theories of liability—the firefighter for their individual conduct under a reckless disregard standard and the district under respondeat superior and a negligence standard" (dissenting op at 7-8). We agree that the Legislature can immunize a party from individual liability for their breach of a duty while preserving another party's vicarious liability for that same breach (or vice versa)—*as long as the underlying duty of care*

IV.

Our holding that the statutes in question do not impose vicarious negligence liability on a fire district for conduct that is privileged under Vehicle and Traffic Law § 1104 is consistent with this Court's precedent addressing vicarious liability claims against municipalities under that statute. Since its enactment in 1957, both litigants and this Court have understood that section 1104 limits the vicarious liability of municipalities in the same way it does the liability of their emergency vehicle drivers. In *Saarinen v Kerr*, this Court unanimously held that the Village of Massena was entitled to summary judgment in an action arising from a collision caused by a Village emergency vehicle (84 NY2d 494, *supra*). The Court stated that "[w]ith respect to the Village's *vicarious liability* for [the driver's] . . . conduct, the initial critical question is *what standard should be applied* in evaluating the culpability of that conduct" (*id.* at 499 [emphases added]). The Court concluded that Vehicle and Traffic Law § 1104 (e) "precludes the imposition of liability for otherwise privileged conduct except where the conduct rises to the level of recklessness" (*id.* at 497). Because the driver had not acted recklessly, the Court held that the Village was entitled to summary judgment—in effect holding that the reckless disregard standard applies to vicarious liability claims against municipalities as well as direct claims against drivers (*see id.* at 503).

---

*remains undisturbed.* The fundamental flaw in the dissent's analysis is its failure to recognize that Vehicle and Traffic Law § 1104 modifies the ordinary duty of care when privileged conduct is at issue, thereby eliminating any basis for either individual or vicarious negligence liability.

*Saarinen* is not the only decision of this Court that evidences that understanding (*see Frezzell*, 24 NY3d at 215 [affirming dismissal of negligence claims against New York City based on showing that police officer's conduct was privileged under section 1104 and not reckless]; *Campbell*, 84 NY2d at 511 [affirming a jury verdict that the City of Elmira was vicariously liable for the reckless driving of its fire truck driver, explaining that "(t)his is not simply a case of a driver running a red light and committing mere negligence"]).[9] To be sure, none of these cases involved fire districts, and, thus, they understandably do not mention General Municipal Law § 205-b (*see* dissenting op at 13-14). But General Municipal Law §§ 50-a, 50-b, and 50-c are materially indistinguishable from section 205-b insofar as they provide that *municipalities* are vicariously liable "for the negligence" of authorized persons who drive their vehicles. Indeed, as noted above, section 205-b was enacted in part to harmonize the vicarious liability of fire districts with that of municipalities under sections 50-a through 50-c. *Saarinen*, *Campell*, and *Frezzell* are incompatible with the proposition that sections 50-a through 50-c subject municipalities to vicarious negligence liability for their drivers' statutorily privileged conduct under Vehicle and Traffic Law § 1104. And in the decades since *Saarinen*, the Legislature has not amended any of the relevant statutes in response to our holdings applying the section 1104 (e) reckless disregard standard to vicarious liability claims. The fact that the recklessness

---

[9] The dissent characterizes these decisions as primarily involving direct claims against drivers (*see* dissenting op at 13-14). However, the appeals in *Saarinen* and *Campbell* involved only vicarious liability claims against municipalities, and *Frezzell* involved both direct and vicarious liability claims.

standard has for decades been understood by courts and the legal community to benefit municipalities is telling. No convincing reason has been offered why fire districts should be treated differently from municipalities in this regard.

Our conclusion that political subdivisions (fire districts *and* municipalities) have no vicarious liability for ordinary "negligence" in a driver's exercise of a Vehicle and Traffic Law § 1104 privilege is also consistent with the Legislature's public policy judgments and objectives in enacting that statute. As explained above, the Legislature's reckless disregard standard avoids judicial second-guessing of difficult and time-pressured decisions and mitigates against the risk that the threat of liability will deter emergency vehicle drivers from taking the types of calculated risks that are occasionally necessary to save lives (*see Frezzell*, 24 NY3d at 217, citing *Saarinen*, 84 NY2d at 502). These concerns are equally applicable where the vicarious liability of a political subdivision is at issue (as, in fact, it was in both *Frezzell* and *Saarinen*). Application of an ordinary negligence standard to claims against fire districts would require judges to dissect and second-guess the split-second, high-pressure decisions of firefighters. Moreover, the possibility of incurring civil vicarious liability for what amounts to a driver's mere failure of judgment could lead fire districts to discourage or even punish their firefighters for taking risks necessary to save lives and property. As we stated in *Saarinen*, "[t]he 'reckless disregard' test, which requires a showing of more than a momentary judgment lapse, is better suited to the legislative goal of encouraging emergency personnel to act swiftly and resolutely while at

the same time protecting the public's safety to the extent practicable" (*see* 84 NY2d at 502).

Accordingly, the order should be reversed, with costs, that branch of defendants' motion seeking summary judgment dismissing the complaint insofar as asserted against defendant Commack Fire District granted and certified question answered in the negative.

RIVERA, J. (dissenting):

Under General Municipal Law § 205-b, a fire district is vicariously liable for its volunteer firefighters' negligent discharge of their duties while operating the district's emergency vehicles. That standard abrogates the common law rule that municipalities are not vicariously liable for the tortious conduct of their agents and employees. The legislature

- 1 -

has taken a more protective approach to individual volunteer firefighters under General Municipal Law § 205-b, shielding them from liability in the discharge of their duties when operating an emergency vehicle, except for wilful negligence or malfeasance. Moreover, under Vehicle and Traffic Law § 1104, volunteer firefighters—and other emergency responders—are further insulated from civil liability for violating certain specified rules of the road, except when their conduct is in reckless disregard of public safety. The only question on this appeal is whether the legislature—sub silentio—supplanted the negligence standard for a fire district's tort liability in General Municipal Law § 205-b with the reckless disregard standard that defines an emergency vehicle driver's liability under Vehicle and Traffic Law § 1104. The unambiguous text yields one answer: General Municipal Law § 205-b sets a negligence standard for the tortious conduct of a fire district's volunteer firefighters at all times when they operate district vehicles in the discharge of their duties.

Unlike with emergency responders, no legislative policy justifies the majority's avoidance of our "rules of the road"—the well-established rules of statutory interpretation—which bind the Court to follow the legislature's carefully calibrated statutory scheme for balancing the interests of local governments and injured parties. The majority upsets this legislatively crafted balance and imposes a standard of liability on the fire district not found in the legislative scheme. Therefore, I dissent.

I.

Plaintiff Courtney Anderson sued defendants Commack Fire District and one of its volunteer firefighters, alleging that she sustained personal injuries when the firefighter drove the District's vehicle through a red light en route to an emergency and collided with plaintiff's car. The parties agree that the standard of vicarious liability applicable to the District has been legislatively set, but dispute whether General Municipal Law § 205-b or Vehicle and Traffic Law § 1104 controls when a fire district's volunteer firefighter ignores traffic rules in the course of responding to an emergency.

A.

As with all questions of statutory interpretation, "[t]he starting point of our analysis is the statutory text because the words of the statute are the best indicator of the legislature's intent. Where the language of the statute is unambiguous, we apply its plain meaning" (*People ex rel. Molinaro v Warden, Rikers Is.*, — NY3d —, —, 2022 NY Slip Op 07093, *2 [2022] [citations omitted]). "[W]e give meaning to all the words of a statute and read the statute as a whole, harmonizing all of its provisions" (*id.* [citations omitted]). " 'Absent ambiguity the courts may not resort to rules of construction to [alter] the scope and application of a statute' because no such rule 'gives the court discretion to declare the intent of the law when the words are unequivocal' " (*Kuzmich v 50 Murray St. Acquisition LLC*,

34 NY3d 84, 91 [2019], quoting *Bender v Jamaica Hosp.*, 40 NY2d 560, 562 [1976]; *see*

McKinney's Cons Laws of NY, Book 1, Statutes § 76).

General Municipal Law § 205-b provides:

> "Members of duly organized volunteer fire companies in this
> state shall not be liable civilly for any act or acts done by them
> in the performance of their duty as volunteer firefighters,
> except for wilful negligence or malfeasance. Nothing in this
> section contained shall in any manner affect the liability
> imposed upon cities, towns and villages by sections fifty-a and
> fifty-b of this chapter, but fire districts created pursuant to law
> shall be liable for the negligence of volunteer firefighters duly
> appointed to serve therein in the operation of vehicles owned
> by the fire district upon the public streets and highways of the
> fire district, provided such volunteer firefighters, at the time of
> any accident or injury, were acting in the discharge of their
> duties. Judgments recovered against a fire district pursuant to
> this section shall be levied upon the taxable property of such
> district in the same manner as moneys raised for the support of
> the district."

In contrast, Vehicle and Traffic Law § 1104 provides, in relevant part:

> "(a) The driver of an authorized emergency vehicle, when
> involved in an emergency operation, may exercise the
> privileges set forth in this section, but subject to the conditions
> herein stated.
>
> "(b) The driver of an authorized emergency vehicle may: . . .
>
> "2. Proceed past a steady red signal, a flashing red signal or a
> stop sign, but only after slowing down as may be necessary for
> safe operation[.] . . .
>
> "(c) Except for an authorized emergency vehicle operated as a
> police vehicle or bicycle, the exemptions herein granted to an
> authorized emergency vehicle shall apply only when audible
> signals are sounded from any said vehicle while in motion by
> bell, horn, siren, electronic device or exhaust whistle as may
> be reasonably necessary, and when the vehicle is equipped
> with at least one lighted lamp so that from any direction, under

> normal atmospheric conditions from a distance of five hundred feet from such vehicle, at least one red light will be displayed and visible. . . .
>
> "(e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

The plain language of General Municipal Law § 205-b imposes liability on a fire district for a volunteer firefighter's "negligence . . . in the operation of vehicles owned by the fire district" (General Municipal Law § 205-b). In contrast, Vehicle and Traffic Law § 1104 does not address a *fire district's* liability at all, but sets the standard of liability for the statutorily privileged actions of a *driver* of an authorized emergency vehicle while engaged in an emergency operation, including volunteer firefighters. Put simply, General Municipal Law § 205-b—which expressly applies to fire districts—plainly governs a fire district's liability, whereas Vehicle and Traffic Law § 1104—which governs drivers—plainly does not.

### B.

The negligence standard for the liability of a fire district comports with the purpose of both sections. As this Court explained in *Thomas v Consolidated Fire Dist. No. 1 of Town of Niskayuna*, when the legislature enacted General Municipal Law § 205-b in 1934, the Court had not yet held that the waiver of immunity from liability in the Court of Claims Act applied to local state subdivisions (*see* 50 NY2d 143, 146 [1980]). The State waived its immunity in 1929 and, 16 years later, the Court clarified in *Bernadine v City of New*

*York* that this waiver extended to local subdivisions (*see* 294 NY 361, 365-366 [1945]). In enacting General Municipal Law § 205-b, "the [l]egislature sought to assure that there would be some liability on the part of the fire districts where previously there had been some doubt" (*Thomas*, 50 NY2d at 146). Additionally, "[t]he [l]egislature has recognized the fact that volunteer fire[fighters] were liable for personal negligence by the enactment of section 50 (c) and section 205 (b) of the General Municipal Law, by which the municipalities expressly assumed that liability" (*Ottmann v Village of Rockville Ctr.*, 275 NY 270, 274 [1937] [citation omitted]).[1]

In so doing, General Municipal Law § 205-b abrogated the common law rule that municipalities are not liable for the torts of their agents caused by performance of their governmental duties (*see Berger v City of New York*, 260 App Div 402, 403 [2d Dept 1940] ["Under the common law a municipality was not liable for the torts of a police( ) (officer) or other agents engaged in performance of duties strictly governmental"], *affd without op* 285 NY 723 [1941]; Letter from Off of the Chairman of the Law Comm, Firemen's Assn of the St of NY, Bill Jacket, L 1934, ch 489 at 5 [explaining that "(u)nder the common law(,) a fire district (was) not liable for the negligent actions of fire(fighters)"]; Dan Lamot, Comment, *Municipal Liability for Torts of Firemen*, 31 Alb L Rev 256, 261-262 [1967]).

---

[1] Notably, under General Municipal Law § 50-c, fire districts are also liable for the negligence of paid firefighters who are acting in the scope of their employment and discharging their statutory duties, as imposed by the fire districts, in the operation of vehicles on the public roadways within the fire districts. Thus, along with General Municipal Law § 205-b, the statutory scheme exposes fire districts to liability for the ordinary negligence of all its firefighters—volunteer and paid.

Consistent with that waiver of sovereign immunity, the legislature intended to displace any common law rules that would prevent a fire district from being held liable. Indeed, then-Governor Franklin D. Roosevelt vetoed an earlier version of the bill because it did not go far enough in that it only "exempt[ed] volunteer fire[fighters] from civil liability" without "mak[ing] the fire district[s] which they serve liable for their negligence" (Letter from Off of the Chairman of the Law Comm, Firemen's Assn of the St of NY, Bill Jacket, L 1934, ch 489 at 5).

Essentially, General Municipal Law § 205-b placed fire districts on par with employers for claims sounding in tort stemming from employee conduct. Under established principles of vicarious liability, an employer is liable for the tortious acts of its employee acting within the scope of their employment (*see Rivera v State of New York*, 34 NY3d 383, 389 [2019], citing *Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933 [1999], *Riviello v Waldron*, 47 NY2d 297, 304 [1979], and *Jones v State of New York*, 33 NY2d 275 [1973]; Restatement [Third] of Agency § 7.07; Restatement [Second] of Agency § 219 [1]; *see also* Restatement [Third] of Torts: Apportionment of Liability § 13). Thus, contrary to the majority's view, General Municipal Law § 205-b is not a liability shifting statute (*see* majority op at 9; *id.* n 7). General Municipal Law § 205-b does not "shift" liability away from the volunteer firefighter at all, but instead sets the respective liabilities for the volunteer firefighter and the fire district based on policy concerns. Under this statute, a volunteer firefighter is not completely absolved of liability; instead their liability is limited to "wilful negligence or malfeasance" (General Municipal Law § 205-b; *cf. Xiang Fu He v Troon Mgt., Inc.*, 34 NY3d 167, 176 [2019] [local ordinance "shift[ed]" civil liability from

the City to out-of-possession owners" for falls occurring on snow-or ice-covered sidewalks abutting real estate]). Thus, it is possible for a volunteer firefighter and the fire district both to be liable for the firefighter's conduct based on different theories of liability—the firefighter for their individual conduct under a reckless disregard standard and the district under respondeat superior and a negligence standard.

The majority also incorrectly frames Vehicle and Traffic Law § 1104 as setting the duty of care and General Municipal Law § 205-b as merely providing that the district is liable if a volunteer firefighter breaches that specific duty of care (*see* majority op at 8-9). However, this formulation elides the fact that Vehicle and Traffic Law § 1104 (a) and (b) set forth the privileged conduct—i.e., the actions legislatively permitted for an emergency vehicle driver. As the majority acknowledges (*see id.* at 7-8), a different provision— Vehicle and Traffic Law § 1104 (e)—sets the standard by which the exercise of that privileged conduct is measured at reckless disregard for the public safety. Thus, an emergency vehicle driver, like a volunteer firefighter, may be civilly liable for tortious injury if they recklessly run a red light while responding to an emergency. Like the "reckless disregard" standard of care in Vehicle and Traffic Law § 1104 (e), the reference to "negligence" in General Municipal Law § 205-b articulates a traditional measure of tort liability (*see e.g. Ferreira v City of Binghamton*, 38 NY3d 298, 308 [2022]; *Solomon v City of New York*, 66 NY2d 1026, 1027 [1985]).

II.

The legislative history of General Municipal Law § 205-b confirms this straightforward reading. The assemblymember who introduced the bill explained that the enacted scheme would correct the "unfair and unjust" situation whereby "volunteer fire[fighters] who are performing a great and indispensable public service" could be held liable under ordinary negligence principles (Assembly Introducer's Mem in Support, Bill Jacket, L 1934, ch 489 at 3). The Firemen's Association of the State of New York, which promoted the legislation, contended that the bill "reliev[ed] volunteer fire[fighters] engaged in the performance of duty as such from civil liability, except in cases of wilful negligence or malfeasance," while "impos[ing] *upon fire districts* liability for negligence on the part of volunteer fire[fighters] duly appointed to serve therein" (Letter from Off of the Chairman of the Law Comm, Firemen's Assn of the St of NY, Bill Jacket, L 1934, ch 489 at 4 [emphasis added]). In support of limiting volunteer firefighters' tort liability, the Firemen's Association further stated:

> "It is manifestly unfair that volunteer fire[fighters] who serve without the hope of fee or reward and solely as a matter of civic duty should be held liable in damages for negligent acts occurring in the performance of their duties. This is particularly true in these days of high powered motor fire apparatus[es] and the congestion of motor traffic on the highways. A volunteer fire[fighter] owning a small homestead may have it taken away merely because an accident happens while [the firefighter] is engaged in driving the fire apparatus to the scene of the fire" (*id.*).

In addition to balancing fire districts' and volunteer firefighters' interests in apportioning their liabilities, General Municipal Law § 205-b also carefully balances

volunteer firefighters' and injured parties' interests. The statute ensures a remedy for tort plaintiffs by exposing fire districts to liability for the firefighter's negligence while also immunizing the individual volunteer firefighter from liability unless their conduct was the result of "wilful negligence or malfeasance" (General Municipal Law § 205-b), both heightened standards. "Wilful negligence" has been defined as negligence approaching recklessness (*see* Black's Law Dictionary [11th ed 2019], gross negligence), whereas "malfeasance" is "[a] wrongful, unlawful, or dishonest act; esp[ecially], wrongdoing or misconduct by a public official" (*id.*, malfeasance). Thus, General Municipal Law § 205-b immunizes volunteer firefighters in all but those cases involving intentionally egregious conduct.

In comparison, Vehicle and Traffic Law § 1104 does not refer to the liability of fire districts or the driver's employer for its own conduct, nor does subdivision (e) refer to a fire districts' vicarious liability. Instead, Vehicle and Traffic Law § 1104 applies to drivers of "authorized emergency vehicle[s]"—including volunteer firefighters—during "emergency operation[s]," as defined by Vehicle and Traffic Law §§ 101 and 114-b. This section provides limited immunity for drivers who, as relevant here, drive an authorized emergency vehicle through a red light with sirens and lights activated during an emergency operation (*see* Vehicle and Traffic Law § 1104 [b] [2], [c], [e]). In those circumstances, the driver still has "the duty to drive with due regard for the safety of all persons" and is liable for "the consequences of [the driver's] reckless disregard for the safety of others" (*id.* subd [e]).

Reckless disregard of public safety is a heightened standard of tort liability that "demands more than a showing of a lack of due care under the circumstances—the showing typically associated with ordinary negligence claims" (*Frezzell v City of New York*, 24 NY3d 213, 217 [2014] [internal quotation marks omitted], quoting *Saarinen v Kerr*, 84 NY2d 494, 501 [1994]). Under it, the driver must have "intentionally done an act of unreasonable character in disregard of a known or obvious risk that as so great as to make it highly probable that harm would follow and . . . with conscious indifference to the outcome" (*id.* [internal quotation marks omitted], quoting *Saarinen*, 84 NY2d at 501, and Prosser & Keeton, Torts § 34 at 213 [5th ed 1984]). But, again, this more demanding reckless disregard standard applies only when the driver disregards certain traffic rules, like running a red light, while responding to an emergency with the vehicle's lights and sirens activated (*see* Vehicle and Traffic Law § 1104 [b] [2], [c], [e]). "Any other injury-causing conduct of [the] driver is governed by the principles of ordinary negligence" (*Kabir v County of Monroe*, 16 NY3d 217, 220 [2011]). As the Court stated in *Campbell v City of Elmira*, "the [l]egislature's choice of words in Vehicle and Traffic Law § 1104 (e) reflects a carefully calibrated standard" (84 NY2d 505, 512 [1994]). The majority upsets the legislative scheme and arrives at its atextual interpretation that Vehicle and Traffic Law § 1104 sets the standard of care for a fire district's vicarious liability in derogation of the principle that "[w]e are not at liberty to second-guess the legislature's determination, or to disregard—or rewrite—its statutory text" (*Matter of New York Civ. Liberties Union v New York City Police Dept.*, 32 NY3d 556, 567 [2018], citing *Matter of Wolpoff v Cuomo*, 80 NY2d 70, 79 [1992]). Of course, only by legislative

amendment, not judicial fiat, may the language of the statute be altered (*see e.g. Matter of Endara-Caicedo v New York State Dept. of Motor Vehicles*, 38 NY3d 20, 34 [2022, Rivera, J., dissenting]).

The majority jettisons this principle in favor of an interpretation whereby the legislatively-displaced common-law doctrine of vicarious liability is judicially resuscitated to impute Vehicle and Traffic Law § 1104 (e)'s more protective standard for emergency drivers to fire districts. Specifically, the majority relies on the fact that Vehicle and Traffic § Law 1104 (e)'s reckless disregard standard applies "in a specific context . . . and is also the later-enacted statute" to conclude that the reckless disregard standard applies to the fire districts (*see* majority op at 11-12). But that fact has no bearing on "the intention of the Legislature" which is of course "our primary consideration" (*DCH Auto v Town of Mamaroneck*, 38 NY3d 278, 292 [2022]). True, the Court sometimes looks to the order in which statutes are enacted to ascertain their meaning, but typically only to confirm a plain-text reading (*Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.*, 8 NY3d 226, 233 [2007]). In any case, the fact that the Vehicle and Traffic Law § 1104 (e) does not refer to both the firefighter and the fire district's respective liability, despite the existing statutory structure of General Municipal Law § 205-b, confirms that the legislature did not silently adopt a different standard for fire districts. Indeed, if the legislature had intended to impose the same duty of care on fire districts under General Municipal Law § 205-b, "it would have said so in the statute" (*Cruz v TD Bank, N.A.*, 22 NY3d 61, 72 [2013]); *see also Whitman v Am. Trucking Associations*, 531 US 457, 468 [2001] [noting that "Congress . . . does not

alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions"]). Thus, the legislative intent behind the provisions at issue—expressed in their plain texts—is the "convincing reason . . . why fire districts should be treated differently from municipalities" (majority op at 14).

In sum, the plain text of these respective statutes establish the following standards of tort liability for volunteer firefighters and the fire districts they serve: (1) a volunteer firefighter is liable for the reckless disregard of the safety of others when operating a fire district's authorized emergency vehicle involved in an emergency operation and the firefighter "engages in the specific conduct exempted from the rules of the road by Vehicle and Traffic Law § 1104 (b)" (*Kabir*, 16 NY3d at 220); (2) at all other times during the performance of their duties a volunteer firefighter is liable for "wilful negligence or malfeasance" (General Municipal Law § 205-b) in the operation of the district's vehicle; and (3) the fire district where the volunteer firefighter serves is liable for the negligent conduct of that firefighter when operating the district's vehicle "in the discharge of [the firefighter's] duties" (*id.*), including when driving an emergency vehicle under the conditions set forth in Vehicle and Traffic Law § 1104.

III.

Contrary to the majority's view (*see* majority op at 12-14), our prior case law does not foreclose this interpretation of the respective statutes. *Campbell*, *Saarinen*, *Kabir*, and *Frezzell* did not involve fire districts' liability for their volunteer firefighters. In those cases, the Court had no occasion to consider the applicability of General Municipal Law § 205-b,

and instead clarified the applicability and scope of Vehicle and Traffic Law § 1104 as litigated by those parties. *Campbell* involved a City of Elmira firetruck driver and presented the question of whether the evidence supported the jury verdict that the driver acted with reckless disregard of the safety of others in violation of Vehicle and Traffic Law § 1104 (e) (*see* 84 NY2d at 507-508). The Court held the evidence sufficient (*see id.* at 511-513). In *Saarinen*, the Court determined that the standard applicable to privileged conduct by a Village of Massena police officer was Vehicle and Traffic Law § 1104's "reckless disregard" standard, a more demanding standard than that implicated by the "due care under the circumstances" language set forth in that same section (84 NY2d at 501).

In *Kabir*, which involved a Monroe County deputy sheriff, the Court clarified that the recklessness standard in Vehicle and Traffic Law § 1104 (e) applies solely to the privileged conduct in Vehicle and Traffic Law § 1104 (b) when performed under the conditions in subdivision (c) (*see* 16 NY3d at 222-223). In *Frezzell*, the Court concluded that the defendants met their burden of establishing that a New York City police officer's conduct did not amount to reckless disregard for liability under Vehicle and Traffic Law § 1104 (e) (*see* 24 NY3d at 217-219).

The majority attempts to liken this case to those cases because they too "address[ed] . . . claims against municipalities under [Vehicle and Traffic Law § 1104]" (majority op at 12) and, in addition to this sweeping generality, offers an observation that, since the Court decided those cases, the legislature has not amended other provisions of the General Municipal Law—sections 50-a, 50-b, and 50-c (*id.* at 14). Plainly, none of this is relevant to the correct construction of the statutes at issue here. To be sure, "the legislative history

of a particular enactment must be reviewed in light of the existing decisional law which the Legislature is presumed to be familiar with and to the extent it left it unchanged, that it accepted[,]" (*Matter of Knight-Ridder Broadcasting, Inc. v Greenberg*, 70 NY2d 151, 157 [1987]), but in none of these cases—*Saarinen*, *Campbell*, or *Frezzell*, or *Kabir*—did the Court so much as mention General Municipal Law § 205-b, let alone opine on whether Vehicle and Traffic Law § 1104 supplanted it regarding the district's vicarious liability for the conduct of its volunteer firefighters.

## IV.

The legislative intent to shield volunteer firefighters from liability for tortious acts that are not wilful or malicious—while imposing liability on the fire district for its volunteer firefighters' ordinary negligence—and principles of vicarious liability support the conclusion that General Municipal Law § 205-b sets the fire district's liability and refute the majority's mistaken conclusion that Vehicle and Traffic Law § 1104 displaces this liability sub silentio. Accordingly, I would answer the certified question in the affirmative.

Order reversed, with costs, that branch of defendants' motion seeking summary judgment dismissing the complaint insofar as asserted against defendant Commack Fire District granted and certified question answered in the negative. Opinion by Judge Cannataro. Judges Garcia, Singas and Troutman concur. Judge Rivera dissents and votes to affirm in an opinion, in which Chief Judge Wilson concurs. Judge Halligan took no part.

Decided April 20, 2023