Belfield v Marte (2026 NY Slip Op 00871)

Belfield v Marte

2026 NY Slip Op 00871

Decided on February 18, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 18, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LINDA CHRISTOPHER
CARL J. LANDICINO
JAMES P. MCCORMACK, JJ.

2023-10523
 (Index No. 51210/20)

[*1]Dwayne Belfield, plaintiff-respondent,
vXaianara Y. Marte, et al., appellants, Tushaine D. Phillpotts-Johnson, et al., defendants-respondents.

Smith Mazure, P.C., New York, NY (Louise M. Cherkis of counsel), for appellants.
Harris Keenan & Goldfarb PLLC, New York, NY (Jason Steinberg and Judith Stempler of counsel), for plaintiff-respondent.

DECISION & ORDER
In an action to recover damages for personal injuries, the defendants Xaianara Y. Marte and Lifeline Ambulance Service, Inc., appeal from an order of the Supreme Court, Kings County (Debra Silber, J.), dated October 6, 2023. The order denied that branch of those defendants' motion which was for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them.
ORDERED that the order is reversed, on the law, with one bill of costs, and that branch of the motion of the defendants Xaianara Y. Marte and Lifeline Ambulance Service, Inc., which was for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them is granted.
On December 15, 2018, an ambulance owned by the defendant Lifeline Ambulance Service, Inc., and operated by the defendant Xaianara Y. Marte (hereinafter together the ambulance defendants), and a vehicle operated by the defendant Tushaine D. Phillpotts-Johnson (hereinafter the Nicholas vehicle) and owned by the defendant Trevor F. Nicholas (hereinafter together the Nicholas defendants) came into contact at the intersection of Kings Highway and Snyder Avenue in Brooklyn. The plaintiff was a passenger in the Nicholas vehicle. Immediately prior to the accident, the Nicholas vehicle was driving eastbound on Snyder Avenue and entered the intersection with a green traffic signal. Marte was driving northbound on Kings Highway and entered the intersection with a red traffic signal.
The plaintiff commenced this action to recover damages for personal injuries. The ambulance defendants moved, inter alia, for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them, contending that Marte's actions were governed by the reckless disregard standard of care pursuant to Vehicle and Traffic Law § 1104, that Marte did not act with reckless disregard for the safety of others, and that Phillpotts-Johnson's actions were the sole proximate cause of the accident. In an order dated October 6, 2023, the Supreme Court denied that branch of the ambulance defendants' motion. The ambulance defendants appeal.
"Vehicle and Traffic Law § 1104 provides a qualified exemption to drivers of authorized emergency vehicles from certain traffic laws when they are involved in an emergency operation" (Robinson v County of Suffolk, 219 AD3d 1542, 1543 [internal quotation marks omitted]; [*2]see McGough v City of Long Beach, 174 AD3d 698, 699; Torres v Saint Vincent's Catholic Med. Ctrs. of N.Y., 117 AD3d 717, 717-718). Those traffic laws include, among other things, proceeding past a steady red signal or exceeding the speed limit (see Vehicle and Traffic Law § 1104[a], [b][2], [3]). Pursuant to Vehicle and Traffic Law § 1104(e), however, "'[t]he foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his [or her] reckless disregard for the safety of others'" (Fuchs v City of New York, 186 AD3d 459, 460). "Thus, the manner in which a driver of an authorized emergency vehicle operates the vehicle in an emergency situation may not form the basis for civil liability to an injured third party unless that authorized emergency driver acted in reckless disregard for the safety of others" (id.; see Vehicle and Traffic Law § 1104; Shalom v East Midwood Volunteer Ambulance Corp., 138 AD3d 724, 725). "This [reckless disregard] standard requires proof that the driver intentionally committed an act of an unreasonable character while disregarding a known or obvious risk that was so great as to make it highly probable that harm would follow" (Shalom v East Midwood Volunteer Ambulance Corp., 138 AD3d at 725-726; see Woodard v Thomas, 77 AD3d 738, 739). Pursuant to Vehicle and Traffic Law § 1104(c), generally "the exemptions apply only when the authorized emergency vehicle sounded audible signals such as a siren and displayed at least one red light" (Wynter v City of New York, 173 AD3d 1122, 1124; see Bonafede v Bonito, 145 AD3d 842, 843; Bryan v City of Long Beach, 138 AD3d 774, 775).
Here, in support of their motion, the ambulance defendants submitted, among other things, transcripts of the deposition testimony of Marte, the plaintiff, Phillpotts-Johnson, and nonparty Conrad Glasgow, an eyewitness to the accident. At her deposition, Marte testified that at the time of the accident, she and her partner were responding to a level one priority call, that the emergency lights and siren on the ambulance were activated the entire time, and that when she arrived at the intersection of Kings Highway and Snyder Avenue, the traffic light was turning red for her direction of travel, so she brought the ambulance to a stop. Marte testified that she stopped for approximately two seconds before proceeding into the intersection, then began to "creep[ ] out" by slowly "hit[ting] . . . the gas," and continued creeping out until the accident occurred. Marte testified that she did not see the Nicholas vehicle while she was stopped at the red light. According to Marte, prior to reaching the intersection at Snyder Avenue, her highest rate of speed on Kings Highway had been 25 miles per hour and her rate of speed at the moment of impact was approximately 4 miles per hour. Glasgow testified during his deposition that the emergency lights and siren were activated on the ambulance as it traveled on Kings Highway until the accident occurred and that he could not understand why the Nicholas vehicle was not slowing down since the siren was blaring. Glasgow testified that he did not notice if the ambulance slowed down at any point before entering the intersection and that he did not see if the ambulance had stopped before it proceeded through the intersection since "at that time [he] was running for [his] life." Glasgow testified that he estimated that the ambulance was traveling at a rate of speed of 45 to 50 miles per hour on Kings Highway since the ambulance had its siren on, because he assumed that usually when an ambulance had its siren on, the "ambulance is probably doing about 45, 50 miles an hour." The plaintiff testified during his deposition that he heard the siren prior to the accident but did not see the ambulance before the accident. Phillpotts-Johnson testified during his deposition that he saw the ambulance's emergency lights from the corner of his eye when the ambulance was 5 to 10 feet from the Nicholas vehicle. Phillpotts-Johnson initially testified that he did not hear a siren but later testified that he could not recall if he had heard an ambulance siren at any point prior to the accident. Phillpotts-Johnson testified that he estimated the ambulance's rate of speed to be 45 to 50 miles per hour.
The ambulance defendants established their prima facie entitlement to judgment as a matter of law by demonstrating that, at the time of the accident, Marte was operating an emergency vehicle while involved in an emergency operation (see Vehicle and Traffic Law §§ 101, 114-b; Alonso v Crest Transp. Serv., Inc., 226 AD3d 634, 635; Torres v Saint Vincent's Catholic Med. Ctrs. of N.Y., 117 AD3d at 718) and that Marte's conduct did not rise to the level of reckless disregard for the safety of others (see Alonso v Crest Transp. Serv., Inc., 226 AD3d at 635; Jobson v SM Livery, Inc., 175 AD3d 1510, 1512). The ambulance defendants' submissions demonstrated that the ambulance's emergency lights and sirens were activated (see Vehicle and Traffic Law § 1104[c]; Alonso v Crest Transp. Serv., Inc., 226 AD3d at 635) and that Marte either stopped or slowed sufficiently before entering the intersection (see Jobson v SM Livery, Inc., 175 AD3d at 1512; [*3]Woodard v Thomas, 77 AD3d at 739). Contrary to the plaintiff's contentions, the deposition testimony of Glasgow and Phillpotts-Johnson did not raise triable issues of fact regarding whether Marte stopped or slowed down prior to entering the intersection (cf. Robinson v County of Suffolk, 219 AD3d 1542, 1544; Sanicola v Wantagh Fire Dist., Inc., 187 AD3d 1232, 1232-1233) or whether the rate of speed at which Marte was driving was reckless, given that Glasgow's estimation of the ambulance's rate of speed was based on an assumption and Phillpotts-Johnson admitted that he first saw the ambulance from the corner of his eye when the ambulance was a few feet from the Nicholas vehicle (see Frezzell v City of New York, 24 NY3d 213, 218). In opposition, the plaintiff and the Nicholas defendants failed to raise a triable issue of fact.
Accordingly, the Supreme Court should have granted that branch of the ambulance defendants' motion which was for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them.
In light of our determination, we need not reach the ambulance defendants' remaining contention.
CHAMBERS, J.P., CHRISTOPHER, LANDICINO and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court